OPINION
{¶ 1} Richard C. Palo ("appellant"), appeals the decision of the Ashtabula Court of Common Pleas granting Vernon I. Palo's ("appellee") domestic violence civil protection order ("CPO").
 {¶ 2} On April 10, 2003, appellee filed his petition for a CPO against his brother, appellant. The record indicates that the petition was the result of a lengthy and continuous pattern of harassment that began when appellee was given temporary custody of appellant's son.[1]
 {¶ 3} Pursuant to R.C. 3113.31(D)(1), the trial court held an ex parte hearing on the same day. During the hearing, it was established that appellant was in jail for a domestic violence conviction of which appellee was the victim[2] and would remain there until April 13, 2003. After hearing testimony on the matter, the court determined there was good cause to grant a temporary order expiring on July 1, 2003 and set the matter for a full hearing on April 18, 2003 so appellant could be present and offer evidence on his own behalf.
 {¶ 4} On the morning of April 18, 2003, before the full hearing on the CPO, appellant filed a notice of appeal of the April 10, 2003 temporary order. Despite his belief that this notice divested the trial court of jurisdiction, the hearing went forward as scheduled. During the hearing, appellee presented evidence of appellant's consistent harassment of him and his family as well as various instances of his unusual if not threatening behavior. Although appellee offered witness testimony from three individuals, including himself, appellant declined examination of each witness. Appellant testified on his own behalf, the upshot of which was an allegation that appellee and his witnesses were liars.
 {¶ 5} After testimony, the court ordered an extension of the CPO for the maximum of five years, effective through April 1, 2008. Appellant subsequently filed a second notice of appeal on April 28, 2003 challenging the April 18, 2003 order which extended the April 10, 2003 temporary CPO.
 {¶ 6} Appellant raises two assignments of error for our review:
 {¶ 7} "[1.] The trial court erred to the prejudice of the defendant-appellant in proceeding to a civil protective order hearing and judgment after a notice of appeal was already filed in the trial court divesting the trial court of jurisdiction denying the defendant-appellant due process of law as guaranteed by the Ohio and U.S. Constitution[s].
 {¶ 8} "[2.] The trial court erred to the prejudice of defendant-appellant by proceeding to a civil protective order hearing once the notice of appeal had been filed and the defendant-appellant did not expect a hearing and hence did not have time to prepare for same or bring an attorney to same to defend against same violating defendant-appellant's due process rights under the 5[th], 6th[,] and 14th amendment[s] [of the] Ohio U.S. Constitution[s] prejudicing the appellant-defendant." (sic.)
 {¶ 9} Appellant's first assignment of error challenges the lower court's jurisdiction to grant the CPO. Appellant contends that his notice of appeal filed on April 18, 2003 functioned to divest the lower court of jurisdiction. Without proper jurisdiction, appellant concludes, the April 18, 2003 hearing conducted and the subsequent order granting appellee's CPO are nullities.
 {¶ 10} Appellant made no objection to the lower court's purported lack of jurisdiction during the hearing. Generally, a litigant's failure to raise an issue before the trial court waives his or her right to raise that issue on appeal. See,Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220, overruled on other grounds by Collins v. Sotka (1998),81 Ohio St.3d 506. However, objections based on lack of subject matter jurisdiction may be raised at any stage of the proceedings and may even be challenged for the first time on appeal. In reByard (1996), 74 Ohio St.3d 294, 296. We shall accordingly address the merits of appellant's argument.
 {¶ 11} We first note that appellant's argument presupposes that the filing of a notice of appeal acts to absolutely freeze the trial court's jurisdiction on any matter relating to the case on which the notice is premised. Appellant's construction of the law is mistaken. In general, a trial court is not completely divested of jurisdiction by the mere filing of a notice of appeal. Majnaric v. Majnaric (1975), 46 Ohio App.2d 157, 158. Rather, a trial court retains all jurisdiction which does not conflict with the jurisdiction of the appellate court. AlegisGroup L.P. v. Allen, 11th Dist. No. 2002-P-0026, 2003-Ohio-3501, at ¶ 11.
 {¶ 12} With this in mind, it bears mention that the filing of a notice of appeal may only divest a trial court's jurisdiction over orders which are final and appealable. See, e.g. R.C.2505.02. R.C. 3113.31(D)(1) refers to the issuance of an ex parte civil protection order after an ex parte hearing. The statute provides:
 {¶ 13} "The court, for good cause shown at the ex parte hearing, may enter any temporary orders, with or without bond, including but not limited to, an order described in division (E)(1)(a), (b), or (c) of this section, that the court finds necessary to protect the family or household member from domestic violence." (Emphasis added).
 {¶ 14} R.C. 3113.31(D)(1) explicitly defines an ex parte order as a temporary order. Moreover, R.C. 3113.33(G) defines those CPOs which are final and appealable and explicitly excludes ex parte orders.[3] Pursuant to the statutory scheme governing domestic violence CPOs, an ex parte order is always temporary and thus, by definition, is not final and appealable.
 {¶ 15} Here, appellant's notice of appeal filed on April 18, 2003 was predicated upon the temporary civil protection order issued on April 10, 2003 following ex parte proceedings on the matter. According to the record, appellant was absent from these proceedings because he was serving jail time on a conviction for domestic violence. The court granted a temporary CPO on April 10, 2003, but set the matter for a full hearing so that appellant could attend. As the April 10, 2003 hearing was ex parte in nature, the order issuing therefrom was not a final, appealable order. R.C. 3113.33(D)(1) and R.C. 3113.33(G). Accordingly, appellant's April 18, 2003 notice of appeal was a nullity and did not divest the lower court of jurisdiction.
 {¶ 16} Appellant's first assignment of error lacks merit.
 {¶ 17} In his second assignment of error, appellant contends he was denied due process as he was denied notice and the substantive opportunity to present evidence through counsel. In his own words, appellant submits:
 {¶ 18} "Knowing the law, that said trial court was divested of jurisdiction to proceed the defendant appellant cancelled the arrival of his attorney so as to not incur cost for the defense of same, when per the law, no hearing was allowed to proceed."
 {¶ 19} Appellant appears to conclude that the trial court's failure to renounce jurisdiction somehow deprived him of meaningful notice of the hearing and denied him of his right to be heard. We disagree.
 {¶ 20} First of all, appellant failed to object to the purported due process violations during the hearing. If no objection is raised for the lower court's consideration, any error is considered waived. Stores Realty Co. v. City ofCleveland (1975), 41 Ohio St.2d 41, 42. Nevertheless, we may consider a challenge not objected to in the lower court under the plain error doctrine. In the matter of Williams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, at ¶ 29. However, the plain error doctrine may be utilized in civil cases only with great circumspection to prevent a manifest injustice. Id., citing Cleveland Elec. Illum. Co. v. Astorhurst Land Co.
(1985), 18 Ohio St.3d 268.
 {¶ 21} Procedural due process requires adequate notice and an opportunity to be heard. In re Adoption of Greer (1994),70 Ohio St.3d 293, 301, citing Cleveland Bd. Of Edn. v. Loudermill
(1985), 470 U.S. 532.
 {¶ 22} In the current matter, appellant claims he was denied proper notice because he was "surprised" when the court proceeded with the April 18, 2003 hearing in spite of its purported lack of jurisdiction. As suggested supra, any surprise suffered by appellant was a result of his misunderstanding of the law. The fact that appellant may have been surprised, however, does not imply that notice failed. Appellant attended the hearing and therefore clearly had notice of the proceedings.
 {¶ 23} Further, appellant was offered an open and meaningful opportunity to be heard and effectively declined.[4]
Appellee, who had the burden of going forward in this matter, offered testimony from three witnesses (including himself). When offered the opportunity to cross examine appellee's witnesses, appellant stated: "I'm going to opt not to, and I'm going to take up the issues on appeal."
 {¶ 24} Moreover, when given the opportunity to testify on his own behalf, he provided the following, somewhat scattered narrative:
 {¶ 25} "I just want to say that reinstating this order is not necessary. I believe that my brother and his wife are doing everything they can just to try and keep me from getting my son. And I'm going through all the proper legal channels to have my son returned. And I believe that my brother has left out very much information that could have painted a picture from his testimony accurately and honestly. I think he's been quite dishonest with his testimony and his wife also.
 {¶ 26} "And basically, I love my son, and I've been deprived of him. My brother and his wife have committed fraud on the Court and abused the process and has demonstrated to me a very, very poor Christian testimony in regard to all the opportunities that available to him. And being as we're common background, he could have reached out a lot and really help facilitate the reuniting of my son and myself. And I want to reiterate his wife's testimony was very, very, very poorly misrepresented to the nature of the situations between us as family members.
 {¶ 27} "And again I want to say that reinstating this order is not going to help our situation. We need to come together and talk and work on these things as brothers should and believers of a common faith and Jesus Christ, Our Lord and Savior. That's all I have to say. * * *"[5]
 {¶ 28} Appellant was given the opportunity to be heard and we cannot evaluate how he chose to exercise that opportunity. In sum, appellant had notice and an opportunity to be heard. We therefore hold that appellant was not denied procedural due process.
 {¶ 29} Appellant's second assignment of error is without merit.
 {¶ 30} For the above reasons, appellant's two assignments of error are overruled and the decision of the Ashtabula County Court of Common Pleas granting appellee's petition for a CPO is affirmed.
Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concurs, Grendell, J., concurs in judgment only with Concurring Opinion.
[1] In January, 2001, appellant was stopped in his vehicle, with his son, Richard, Jr. Appellant was placed in jail and the Highway Patrol called appellee to retrieve Richard, Jr. He did so. Although the nature of the charges is not altogether clear, appellee testified that appellant was stopped for driving with neither a license nor license plates. Apparently, appellant had a history of "anti-government" behavior, an instance of which was his refusal to register his vehicle or obtain a license. After taking Richard, Jr., into his home, appellee discovered the child could not be enrolled in school because he was not a resident of the district; the Children's Services Board (CSB) subsequently was notified. Appellee was eventually given temporary custody of Richard, Jr., and a case plan was developed. Appellant did not follow the case plan, but apparently believed appellee was responsible for Richard, Jr.'s removal.
[2] The domestic violence conviction was a result of an incident wherein appellant removed the parties' father from an assisted living home. According to appellee, who was the father's guardian, appellant removed the father as well as his belongings from the home without notice. Appellee could not locate his father immediately but, around 10:00 p.m. that night, found him with appellant. Appellee tried to return the father to the assisted living facility, but the father was not amenable. Appellee therefore transported the father to his former residence. Ultimately appellant surrendered the father's belongings and after the brothers had a brief conversation, appellee asked appellant to leave. As appellant was leaving, he sprayed appellee, either three or four times, with what was described as a "mace-like substance." Appellee reported the incident and a complaint followed.
[3] "* * * An order issued under this section, other than anex parte order, that grants a protection order or approves a consent agreement, or that refuses to grant a protection order or approve a consent agreement, is a final, appealable order. * * *" (Emphasis added).
[4] Appellant contends that the court denied him his right to counsel because it moved forward with the hearing even though appellant had no representation. However, the record reveals that the court did not deny appellant representation and, in fact, inquired as to whether appellant had counsel. Appellant responded in the negative and moved forward without objection or motion for continuance. In his brief, appellant argues that he allegedly instructed his lawyer that he did not need his representation because the court lacked jurisdiction. Even if this is true, the court did not deny appellant representation; rather, appellant's misunderstanding of civil and appellate procedure led him to decline the services of his attorney. Counsel exists to provide a litigant with the technical skills to make properly informed legal decisions. The fact that appellant evidently drew his own erroneous legal conclusions and accordingly determined his counsel's services unnecessary in no way rises to the level of a due process violation.
[5] Appellant's narrative was followed by a potent cross-examination wherein appellant admitted to: (1) sending flyers to individuals and businesses characterizing appellee as a kidnapper, a liar, and abuser of the legal process; (2) writing a letter, allegedly directed to appellant and his wife, citing disconnected Biblical passages which concluded with an arcane death threat; (3) writing a cryptic letter discussing how a child is the "property" of a parent and, under the circumstances, a father is the "legal title holder" to his son; (4) to frequently driving by appellee's home; and (5) to striking appellee's wife's car. The testimony served to thoroughly undermine appellant's narrative wherein he characterized appellee and his wife as liars.