OPINION
{¶ 1} In this accelerated calendar case, appellant, Frank M. Gredence, appeals the judgment entered by the Lake County Court of Common Pleas, Domestic Relations Division. The trial court entered a civil protection order against Gredence, ordering him to stay away from appellee, Jeanne L. Sistek, and Danny, the parties' minor son.
 {¶ 2} Gredence and Sistek were involved in a romantic relationship for several years. The relationship produced one child, Danny. In 2004, Gredence ended the relationship. At all relevant times, Gredence and Sistek lived on the same street, with Sistek living only six houses from Gredence.
 {¶ 3} In November 2004, Sistek initiated a child support proceeding against Gredence, wherein she sought child support for Danny. A hearing was set for January 6, 2005 in the child support matter. Neither Gredence nor his attorney appeared for the January 6, 2005 hearing.
 {¶ 4} According to the testimony of Sistek, Gredence arrived at her residence on January 7, 2005. At that time, she was outside holding Danny. Gredence proceeded to yell at her about the support hearing. In addition, he threatened to kill both Sistek and Danny. Following this incident, Gredence went to her mother's residence, because she was in fear of Gredence. The following day, Sistek filed a police report.
 {¶ 5} Gredence denies being at Sistek's residence on January 7, 2005. Further, he specifically denied making any death threats to Sistek or Danny.
 {¶ 6} As a result of the events on January 7, 2005, Gredence was arrested and charged with domestic violence. He pled guilty to a reduced charge of disorderly conduct.
 {¶ 7} In February 2005, Sistek filed the instant action seeking a civil protection order against Gredence. A hearing was held on the motion. Both parties testified on their own behalf. Their testimony was substantially different regarding the underlying events.
 {¶ 8} Following the hearing, the trial court issued a civil protection order against Gredence. The order applied to Sistek and Danny. The order contained several restrictions. One of the restrictions prohibited Gredence from being present within five hundred feet of Sistek and Danny or a location where they were likely to be present. Another restriction prohibited Gredence from consuming, using, or possessing drugs or alcoholic beverages. Finally, the order prohibited Gredence from possessing, using, carrying, or obtaining any deadly weapon.
 {¶ 9} Gredence appealed the trial court's judgment entry to this court. We note, pursuant to R.C. 3113.31(G), the granting of a civil protection order is a final, appealable order.[1]
Thus, we have jurisdiction to address the merits of Gredence's appeal.
 {¶ 10} Gredence raises three assignments of error. His first assignment of error is:
 {¶ 11} "The trial court abused its discretion when it found that appellee proved by a preponderance of the evidence under R.C. 3113.31(D) that she deserved a restraining order against appellant."
 {¶ 12} The decision to issue a civil protection order lies within the sound discretion of the trial court.[2] Absent an abuse of that discretion, a reviewing court will not disturb the trial court's judgment.[3] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[4]
 {¶ 13} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence."[5]
 {¶ 14} Sistek testified to the events of January 7, 2005, when Gredence arrived at her residence while she was standing in her driveway holding Danny. She testified that Gredence spit on her. She testified that he told her "`I should have taken care of this problem a long time ago. I'll cut your throat and his [Danny's], get rid of both my problems.'" Also, he repeatedly told her "`[n]o kid, no support.'" Finally, he told her "`[i]f I see you before we go back to court on Thursday, * * * I will beat the fuck out of you.'" After Gredence made these comments, he spun his tires in Sistek's driveway and left.
 {¶ 15} Gredence testified that he was not at Sistek's residence on January 7, 2005. Rather, he testified that, on that day, he was talking to Diane Matuszak, his neighbor, in his driveway while he was splitting wood. He testified that Sistek arrived at his residence and the two began arguing. He denied threatening Sistek or Danny in any way.
 {¶ 16} Diane Matuszak testified on behalf of Gredence. She also testified that Sistek and Gredence were arguing in Gredence's driveway on January 7, 2005. She testified that Gredence was splitting wood on the day in question. However, through cross-examination, it was revealed that Diane Matuszak was a friend of Gredence and had a possible motive for testifying against Sistek. She acknowledged that her husband does not like Sistek, because he blames Sistek for having their house raided for drugs.
 {¶ 17} Sistek's and Gredence's respective testimony depicted an entirely different version of the events of January, 7, 2005. However, the weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier-of-fact to decide.[6] The trial court was permitted to accept Sistek's testimony as credible. Likewise, the trial court was in a position to discount the testimony of Gredence and Diane Matuszak if it found that testimony to be less credible.
 {¶ 18} In addition to the events of January 7, 2005, Sistek testified to other events between herself and Gredence. One incident occurred in 2003. During this incident, Sistek arrived at Gredence's residence with Danny. At that time, Gredence was cleaning a deer with a knife. The two became engaged in an argument. Gredence was yelling at Sistek while holding the knife. Sistek testified she felt threatened during this time.
 {¶ 19} Also, Sistek testified that Gredence left a message on her answering machine on November 17, 2004, when she initiated the child support proceeding. In the message, Gredence called Sistek a "stupid bitch," and told her she "would get what was coming." Sistek perceived this message as a threat.
 {¶ 20} Finally, Sistek testified that Gredence encountered her in the hallway of the courthouse on the day of the rescheduled child support hearing. He called her a "fucking whore." Court personnel separated the parties and allowed Sistek to sit in a back room. Sistek testified she was scared during this time.
 {¶ 21} The trial court did not abuse its discretion by finding that Sistek demonstrated, by a preponderance of the evidence, that she and Danny were in danger of domestic violence.
 {¶ 22} Gredence's first assignment of error is without merit.
 {¶ 23} Gredence's second assignment of error is:
 {¶ 24} "The trial court erred in allowing testimony about matters unrelated to the civil protection order."
 {¶ 25} The admission of evidence is within the discretion of the trial court.[7] A reversal will not be warranted unless the trial court abused its discretion.[8] Again, "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[9]
 {¶ 26} Gredence objects to the trial court taking judicial notice of him giving Sistek "the finger" during the hearing. While Sistek was testifying, her attorney, Karen Lawson, asked Sistek what Gredence was doing at that time. Sistek responded that Gredence was pointing his middle finger at her. Gredence's attorney, Paul Malchesky, objected and informed the court that he was observing Gredence during that time, and Gredence did not point his middle finger. Attorney Lawson responded that she noticed Gredence pointing his middle finger at Sistek. The trial court admitted it did not see Gredence's conduct, but took Attorney Lawson's representation, since she was "an officer of the court." The trial court then issued a general instruction, "[w]hat I will indicate to everyone is, let's remember we are in a courtroom and conduct ourselves accordingly."
 {¶ 27} There is no indication the trial court gave any weight to the finger incident when it rendered its decision. Further, the trial court appropriately handled the situation by giving everyone in the courtroom an instruction to "behave."
 {¶ 28} Gredence also asserts that the trial court erred by permitting Sistek to testify regarding alleged violations of a temporary protection order against Gredence. The questioning suggested that Gredence may have attempted to contact Sistek via email on her work computer. Gredence objected to the questioning on the basis that he had been found not guilty of violating the temporary order regarding this exact instance in Willoughby Municipal Court. Gredence did not submit a judgment entry or other documentation to verify this assertion. Regardless, the trial court sustained the objection on the ground that the prospective testimony was beyond the scope of the hearing. No testimony regarding the exact nature of the alleged violation of the temporary protection order was introduced.
 {¶ 29} The trial court properly sustained Gredence's objection to this issue and instructed Sistek's attorney to focus on the pertinent events relating to the hearing.
 {¶ 30} Finally, Gredence objects to questioning during cross-examination by Sistek's counsel. The questioning concerned a hearing before Judge Lucci on a civil stalking order filed by Gredence against Sistek. Gredence initially objected to the questioning, and the trial court overruled the objection on the basis it presumed testimony from the prior hearing was going to be used to impeach Gredence. Thereafter, Gredence was asked what the outcome of the prior proceeding was, and he testified that his petition was dismissed. Gredence's counsel did not object to this subsequent questioning. The line of questioning then changed to a different topic.
 {¶ 31} The trial court initially ruled that the testimony would be admissible for the purposes of impeachment. The questioning then went to the results of the prior proceeding, but Gredence did not object to this questioning. We cannot say the trial court erred in its decision to allow the testimony on the presumption that the questioning may lead to possible impeachment. The fact that Sistek's attorney did not attempt to impeach Gredence does not render the trial court's ruling erroneous.
 {¶ 32} The trial court did not abuse its discretion in handling the admission of evidence in any of the above circumstances.
 {¶ 33} Gredence's second assignment of error is without merit.
 {¶ 34} Gredence's third assignment of error is:
 {¶ 35} "The trial court abused its discretion in barring appellant from consuming, using or possessing alcoholic beverages and from possessing, using, carrying or obtaining any deadly weapon."
 {¶ 36} In issuing a civil protection order, the trial court may add restrictions, provided they are "equitable and fair."[10] "While R.C. 3113.31 affords trial courts discretion in imposing restrictions corresponding to a [civil protection order], this discretion is not limitless."[11]
In determining the reasonableness of a restriction of a civil protection order, the Third Appellate District has adopted a standard similar to that used in determining whether a condition of probation is unduly restrictive.[12] Thus, "restrictions must bear a sufficient nexus to the conduct that the trial court is attempting to prevent."[13]
 {¶ 37} Gredence contends there was no nexus between his conduct and the restriction prohibiting him from possessing deadly weapons. We disagree.
 {¶ 38} In Mann v. Sumser, the Fifth Appellate District upheld a restriction prohibiting the possession of deadly weapons.[14] The court noted that there was evidence that the appellant had threatened to shoot the appellee and her family, thus, the restriction was based on the evidence of the case.[15] However, in Newhouse v. Williams, the Third Appellate District held that a restriction prohibiting the possession of firearms was not supported by the evidence.[16] The court observed that the respondent had not threatened the petitioner with a deadly weapon.[17]
 {¶ 39} The facts of the case sub judice are much more analogous to those of Mann v. Sumser than those of Newhouse v.Williams. Gredence threatened to kill both Sistek and Danny. Specifically, he threatened to slit their throats. By definition, this is threatening to do harm to them with a deadly weapon. Further, there was evidence that Gredence had threatened Sistek on a prior occasion while holding a knife. While he was using the knife to clean a deer, there was evidence he used the knife in a threatening manner. There is a sufficient nexus between the evidence presented at the hearing and the trial court's restriction prohibiting Gredence from possession, using, or obtaining deadly weapons.
 {¶ 40} The trial court's civil protection order also prohibited Gredence from consuming, using, or possessing illegal drugs or alcoholic beverages. In Maag v. Maag, the Third Appellate District held there was not a sufficient nexus between the defendant's conduct and the restriction relating to drugs and alcohol.[18] Thus, the court held that the trial court abused its discretion in issuing the alcohol restriction.[19]
 {¶ 41} In this matter, there was no evidence presented that Gredence was under the influence of drugs or alcohol on January 7, 2005. Nor was there any evidence that Gredence was intoxicated during any of the other incidents when he threatened Sistek. Moreover, there was no evidence presented that Gredence had a drug or alcohol abuse problem. As there was no evidence concerning Gredence and drugs and alcohol, there is no nexus between the evidence at the hearing and the trial court's restriction relating to drugs and alcohol. The trial court abused its discretion by imposing this restriction. This matter is remanded to the trial court, and the trial court is instructed to remove the restriction relating to drugs and alcohol.
 {¶ 42} Since this matter is being remanded to the trial court, we will briefly address our concern with the provision that Gredence stay five hundred feet from Sistek and Danny. This appears to be a boilerplate restriction. The evidence at the hearing established that the parties live on the same street, only six houses apart. On remand, the trial court is instructed to revisit this restriction to ensure that Gredence is not violating the civil protection order when he is on his own property or when he is traveling past Sistek's home as a means of ingress or egress to his home. If necessary, the trial court is to modify this distance so it does not apply to Gredence when he is on his own property. Also, the trial court is to ensure the provision does not interfere with Gredence's ability to travel as part of his normal activities. The trial court may place restrictions on Gredence's conduct during the times it permits him to travel past Sistek's house. Thus, while we anticipate an order from the trial court permitting Gredence to travel past Sistek's residence, we in no way intend for Gredence to harass, intimidate, threaten, or attempt to contact Sistek as a result.
 {¶ 43} Finally, we note that the trial court provided for Gredence to have limited visitation with Danny, only to the extent provided by the juvenile court in the case involving Danny's custody and support. On remand, if necessary, the trial court is instructed to modify this provision to reflect the current status of visitation as set by the juvenile court. The trial court is to continue to allow any court-ordered visitation between Gredence and Danny, in a manner consistent with the current orders of the juvenile court.
 {¶ 44} Gredence's third assignment of error has merit to the extent indicated.
 {¶ 45} The judgment of the trial court granting the civil protection order is affirmed. The trial court's judgment entry regarding the drug and alcohol restriction and the five-hundred foot provision is reversed. This matter is remanded for further proceedings consistent with this opinion.
Donald R. Ford, P.J., Colleen Mary O'Toole, J., concur.
[1] Palo v. Palo, 11th Dist. Nos. 2003-A-0049 and 2003-A-0058, 2004-Ohio-5638, at ¶ 14, fn.3. See, also,Cunningham v. Morgan, 8th Dist. No. 84100, 2004-Ohio-6007, at ¶6, fn.1.
[2] Maglionico v. Maglionico (Nov. 9, 2001), 11th Dist. No. 2000-P-0115, 2001 App. LEXIS 5053, at *4, citing Deacon v.Landers (1990), 68 Ohio App.3d 26, 31, and Dybo v. Dybo (Nov. 5, 1999), 11th Dist. No. 98-G-2155, 1999 Ohio App. LEXIS 5230, at *6-7.
[3] Id.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[5] Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus, citing R.C. 3113.31(D).
[6] See, e.g., State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[7] See, e.g., State v. Kinley (1995), 72 Ohio St.3d 491,497.
[8] Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 299.
[9] Blakemore v. Blakemore, 5 Ohio St.3d at 219.
[10] R.C. 3113.31(E)(1)(h).
[11] Maag v. Maag (Mar. 28, 2002), 3d Dist. No. 16-01-16, 2002 Ohio App. LEXIS 1409, at *9.
[12] Id.
[13] Id.
[14] Mann v. Sumser, 5th Dist. No. 2001CA00350, 2002-Ohio-5103, at ¶ 34.
[15] Id.
[16] Newhouse v. Williams, 3d Dist. No. 16-05-22,2006-Ohio-3075, at ¶ 16.
[17] Id.
[18] Maag v. Maag, 2002 Ohio App. LEXIS 1409, at *9.
[19] Id.