[Cite as *Kuhn v. Kuhn*, 2013-Ohio-5807.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MICHELLE KUHN, | : | **O P I N I O N** |
| Petitioner-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-099** |
| DENNIS P. KUHN, JR., | : | |
| Respondent-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 11 DV 000153.

Judgment: Affirmed.

*Davida J. Dodson,* Legal Aid Society of Cleveland, 8 North State Street, #300, Painesville, OH 44077 and *Tonya Whitsett*, Legal Aid Society of Cleveland, 1223 West 6th Street, Cleveland, OH 44113 (For Petitioner-Appellee).

*Cory R. Hinton*, Rand, Gurley & Hanahan, LLC, 8570 Mentor Ave., Mentor, OH 44094 (For Respondent-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Dennis P. Kuhn, Jr., appeals from the decision of the Lake County Court of Common Pleas, Domestic Relations Division, granting his estranged wife, Michelle Kuhn, a Domestic Violence Civil Protection Order ("DVCPO") until September 12, 2016. Mr. Kuhn argues that the trial court committed prejudicial error given that there was insufficient competent, credible evidence to support the grant of a DVCPO and that the trial court erred in that the decision to grant the DVCPO petition was based upon

hearsay evidence. Finally, Mr. Kuhn argues that the trial court's inclusion of a prohibition from possessing, using, carrying, or obtaining a deadly weapon for the duration of the DVCPO, ordering that his .357 revolver be forfeited, prohibiting him from using or possessing alcohol and suspending his parenting time was unwarranted.

{¶2} On September 12, 2011, Ms. Kuhn filed a petition for a DVCPO, in which she requested an order of protection for herself and her minor children B. K. and S. K. The hearing was held on December 9, 2011 and March 15, 2012. The magistrate's decision was issued on May 25, 2012. Mr. Kuhn filed his first set of objections on June 7, 2012; Ms. Kuhn responded on June 20, 2012. Mr. Kuhn filed his second set of objections on July 23, 2012; Ms. Kuhn responded on July 30, 2012. On August 22, 2012 the trial court adopted the magistrate's decision in its entirety. Mr. Kuhn timely appealed and now brings the following assignments of error:

{¶3} "[1.] The trial court committed prejudicial error when it adopted the Magistrate's Decision of May 25, 2012 and sustained and granted the September 11, 2012 petition for a domestic violence civil protection order given that there was insufficient competent, credible evidence to support a finding of domestic violence."

{¶4} "[2.] The trial court committed prejudicial error when it adopted the Magistrate's Decision given that there was insufficient competent, credible evidence to support the granting of a Domestic Violence Civil Protection Order in that said decision was based on hearsay evidence which had been properly objected to."

{¶5} "[3.] The trial court erred in prohibiting the appellant from possessing, using, or obtaining a deadly weapon for the duration of the domestic violence civil protection order, ordering that the Rossi .357 thirty-eight caliber revolver confiscated by

2

the Mentor Police Department shall be forfeited to law enforcement, prohibiting appellant from using or possessing alcohol, and suspending appellant's parenting time."

{¶6} In his first assignment of error, Mr. Kuhn challenges the trial court's adoption of the magistrate's decision. He argues that Ms. Kuhn failed to present sufficient competent, credible evidence to carry her burden in the DVCPO proceeding.

{¶7} At the hearing, Ms. Kuhn presented testimonial evidence from Mentor Police Officers Michael Bruening and Jason Myers, and Dennis P. Kuhn, Jr., as if on cross-examination. Ms. Kuhn also took the stand in support of her petition. Ms. Kuhn's counsel submitted into evidence a suicide note allegedly written by Mr. Kuhn. Mr. Kuhn's counsel objected to the submission of the note on the basis that it was impermissible hearsay. The magistrate allowed the note into evidence.

{¶8} Dennis and Michelle Kuhn were married in 1995. They are the parents of two children: B. K. (d.o.b. 1-17-96) and S. K. (d.o.b. 1-2-02). In 2010 the parties were engaged in an embittered divorce in the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 10 DR 000666. The divorce case was scheduled for trial on August 3, 2011. Mr. Kuhn did not attend as he had left the marital residence in July 2011, ostensibly to look for work in Texas. The magistrate issued his decision in the divorce on August 10, 2011.

{¶9} On September 11, 2011, two Mentor police officers, Michael Bruening and Jason Meyers, responded to a call from the Super 8 Motel about a possible fight. Officer Bruening, a 20-year veteran of the department, testified that he found Mr. Kuhn laying in the fetal position in the hallway of the second floor. Kuhn had dried blood on his face, which was also black and blue. Mr. Kuhn was incoherent and talking about

3

"terrorists." The fire department was called and Mr. Kuhn was taken to Lake West Hospital.

{¶10} Officers Bruening and Myers then went to Mr. Kuhn's motel room to see if they could determine what had happened to Kuhn. Upon entering they saw dried blood by the door to the bathroom and numerous tissues of dried blood lying on the floor. Additionally, the room was strewn with empty beer cans and multiple boxes of over-the-counter sleeping pills. Officer Bruening then discovered an unsigned note written on the inside flap of a cardboard beer case. The note also appeared to have blood on it. The note stated:

{¶11} Please forgive me. I couldn't allow myself to work that hard and not be able to support myself. I really thought seriously about getting even, and taking Michelle with me. I drove by the house many times. I just couldn't stand the thought that Samantha might be home. I don't want my daughter to remember me as a killer, getting even doesn't really matter. I am dead either way. Please tell Samantha the truth. Maybe someday the laws will change and the average working man who cares about his kids can survive.

{¶12} Officers Bruening and Myers located Mr. Kuhn's truck in the parking lot of the motel. Inside the truck Officer Bruening noticed a folded-up jacket with the butt of a revolver sticking out. The revolver was a Rossi .357 loaded with .38 caliber ammunition. Six rounds of ammunition were found in each of the jacket's two pockets.

{¶13} The combination of Mr. Kuhn's condition, the note and the loaded handgun caused Officer Bruening to be concerned for Ms. Kuhn's welfare. He obtained

4

Ms. Kuhn's address and went to her home. Upon arriving, Officer Bruening found that Ms. Kuhn was safe at home. Officer Bruening then explained to Ms. Kuhn what had happened. Upon hearing about the note and the gun, Ms. Kuhn became very upset and expressed a desire to go someplace where her husband would not find her. She also filed this action seeking a domestic violence protection order for her and her children.

{¶14} Officer Myers followed Mr. Kuhn to Lake West Hospital to continue his investigation. Given the totality of the circumstances, and the concern that he would harm himself, Mr. Kuhn was "pink-slipped" and kept at the hospital for observation. Mr. Kuhn was eventually transferred to North Coast Psychiatric Facility and held there for nearly a month under an involuntary commitment.

{¶15} During the hearing on her motion for a DVCPO, Ms. Kuhn testified as to how much the information given her by Officer Bruening had upset her. She expressed significant concern for herself and her children. Ms. Kuhn testified that she was unaware that Mr. Kuhn had returned from Texas. She was also very concerned about his possession of a handgun as he had never owned a gun during their marriage.

{¶16} Ms. Kuhn testified about five acts of domestic violence committed by Mr. Kuhn during their marriage. The first incident in 1998 resulted in Mr. Kuhn pleading to a reduced charge and being placed into a domestic violence intervention program. The second act occurred in 1999 or 2000 when Mr. Kuhn allegedly pushed Ms. Kuhn into a table causing her significant bruising. According to Ms. Kuhn the Willoughby Police did not press charges. The third incident occurred in 2006 wherein Ms. Kuhn alleged that her husband hit her in the mouth. No police report was filed. The fourth incident occurred in 2010. Ms. Kuhn stated that she was head-butted by Mr. Kuhn. No police

report was filed. The fifth incident occurred in 2011 and involved Mr. Kuhn and his son, Benjamin. Mr. Kuhn was charged, tried and found not guilty of committing domestic violence upon his son.

{¶17} Mr. Kuhn's parents both testified at the hearing. Both denied knowing of any incidents of domestic violence between their son and Ms. Kuhn. However, they both were aware of the incident between Mr. Kuhn and his son. Both testified that their son's marriage had difficulties. They also testified that their son was living at their home upon his return from Texas in September 2011.

{¶18} Mr. Kuhn was called as if on cross-examination in his wife's case in chief and also took the stand in his own case. Mr. Kuhn stated that he had no memory of writing the note found by the police although he admitted that the printing was "definitely similar" to his own. He testified that he did not recall having any thoughts of harming his wife or himself. Mr. Kuhn also testified that he was held against his will at North Coast Psychiatric Facility for nearly a month and that the tests he took proved he was normal.

{¶19} Upon conclusion of the hearing and review of the evidence, the magistrate issued a decision finding that under the totality of the circumstances Ms. Kuhn had shown that she and her children "are in danger of domestic violence." The magistrate held that under R.C. 3113.31 actual violence need not be shown, that the threat of violence is sufficient. In reaching his decision the magistrate determined that there "has been past episodes of violence between the parties."

{¶20} Mr. Kuhn filed objections to the magistrate's decision objecting in particular to the admission of the alleged suicide note as impermissible hearsay. The trial court issued a judgment denying Mr. Kuhn's motion to dismiss and adopting the

6

magistrate's decision in its entirety. The court issued a DVCPO to Ms. Kuhn for protection from Mr. Kuhn until September 12, 2016.

{¶21} In its independent review of the magistrate's decision, the trial court reviewed all of the testimony taken by the magistrate and all of the evidentiary materials submitted. The trial court held that the testimony of Officers Bruening and Myers and Mr. Kuhn's alleged suicide note satisfied Ms. Kuhn's burden of proof. The trial court specifically found that Mr. Kuhn "through his actions on September 11, 2011, placed his Wife in fear" of his "attempting to cause or recklessly causing bodily injury" as well as "placing another person by threat of force in fear of imminent serious physical harm." The trial court noted Mr. Kuhn was "armed and dangerous" as well as under the influence of alcohol and over-the-counter sleeping pills.

{¶22} "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Brown v. Gabram,* 11th Dist. Geauga No. 2004-G-2605, 2005-Ohio-6416, ¶11, citing *Lovas v. Mullett,* 11th Dist. Geauga No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *5-6 (July 29, 2001). As this court has noted, the term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood,* 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto,* 112 Ohio St. 667, 676-678 (1925). The Second Appellate District has also recently adopted a similar definition of the abuse of discretion standard terming it: "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900*,* ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. As The Second District noted, when an appellate court

reviews a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

{¶23} "The burden of proof in the trial court upon a petitioner for a civil protection order is by a preponderance of the evidence." *Cauwenbergh v. Cauwenbergh,* 11th Dist. Ashtabula No. 2006-A-0008, 2007-Ohio-1070, ¶20. "The decision to issue a civil protection order lies within the sound discretion of the trial court." *Hoyt v. Heindell,* 191 Ohio App.3d 373, 2010-Ohio-6058, ¶39 (11th Dist. 2010),

{¶24} The trial court issued a DVCPO pursuant to R.C. 3113.31, which provides, in part:

{¶25} "'Domestic violence' means the occurrence of one or more of the following acts against a family or household member:

{¶26} "(a) Attempting to cause or recklessly causing bodily injury;

{¶27} "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [2903.21.1] or 2911.211 [2911.21.1] of the Revised Code;

{¶28} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 [2151.03.1] of the Revised Code;

{¶29} "(d) Committing a sexually oriented offense."

8

{¶30} Under the totality of the circumstances the magistrate found that Mr. Kuhn had committed acts that placed Ms. Kuhn and her children in danger of domestic violence. Additionally, the magistrate found it very "disconcerting that respondent returned to Ohio from Texas unbeknownst to the petitioner with a loaded gun, additional ammunition and coupled with concern that his daughter Samantha might 'remember him as a killer.' Such a statement infers that the respondent had thoughts other than hurting himself on his mind."

{¶31} The magistrate correctly noted that proof of actual violence is not required under R.C. 3113.31 – the threat of violence is sufficient. "Threats of violence will constitute 'domestic violence' if the fear resulting from those threats is reasonable." *Rhodes v. Gunter,* 9th Dist. Lorain Nos. 02CA008156 and 02CA008157, 2003-Ohio-2342, ¶4. "Reasonableness is determined by referencing the petitioner's history with the respondent." *Id.* "This Court may reverse if the trial court's judgment [granting or denying a petition for a domestic violence civil protection order] is not supported by some competent, credible evidence going to all the essential elements of the case." *Schultz v. Schultz,* 9th Dist. Medina No. 09CA0048-M, 2010-Ohio-3665, ¶5.

{¶32} Mr. Kuhn argues that the information in the alleged suicide note should not have been deemed a threat as the note was never delivered to Ms. Kuhn and she only learned of the contents when informed by Officer Breuning. There is no requirement in the law that a threat be delivered directly from a potential aggressor to a potential victim. *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA0009924, 2011-Ohio-6696, ¶11.

{¶33} Mr. Kuhn also argues that as he had already been hospitalized when Ms. Kuhn learned of the note, she could not have been in fear of imminent harm as required

9

by R.C. 3113.31(A)(1)(b). However, there is no indication in the record that Ms. Kuhn was told that he had been hospitalized. And even if Ms. Kuhn had been informed, she had no way of knowing if he would remain hospitalized for a month or be released that evening.

{¶34} Mr. Kuhn claims that his revolver was located in his car, not because of an intention to use it, but because he was living out of his car and was using the vehicle to store his possessions. However, both of Mr. Kuhn's parents testified that he was living with them on the date of the incident. Mr. Kuhn Sr. testified that his son did not come home that night and did not call. The evidence from the hearing clearly shows that Mr. Kuhn was living with his parents.

{¶35} There was sufficient evidence for the trial court to issue a DVCPO for Ms. Kuhn and the children. The trial court was in the best position to assess the witnesses' credibility and to hear the testimony firsthand. The trial court heard the testimony of Officer Myers, Officer Bruening, Ms. Kuhn, Mr. Kuhn and Mr. Kuhn's parents. In its judgment entry the trial court, which is the same court that heard and decided the parties' divorce proceedings, acknowledged that the parties were engaged in an embittered divorce, and because, in part, of a physical altercation with his son, Ms. Kuhn was the sole residential and legal custodian of the children. In the divorce case Mr. Kuhn's visitation was limited to supervised visitation only.

{¶36} The record demonstrates that the magistrate's evidentiary findings regarding the threat to Ms. Kuhn and the children, independently reviewed and cited by the trial court, are supported by the record. We find that the trial court did not abuse its discretion in adopting the magistrate's findings.

**{¶37}** The first assignment of error lacks merit.

**{¶38}** In his second assignment of error, Mr. Kuhn argues that the trial court erred in adopting the magistrate's decision in that the magistrate used impermissible hearsay to support the finding that an act of domestic violence occurred on September 11, 2011. Specifically, Mr. Kuhn objects to the admission of the alleged suicide note. Mr. Kuhn argues that when he objected to the admission of the note there had been no direct evidence that identified its author.

**{¶39}** Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163 (1980). Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id.* at 164.

**{¶40}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible as evidence unless it falls within one of a number of clearly defined exceptions. Evid.R. 802-804. The note found in Mr. Kuhn's hotel room is unsigned, and an anonymous statement admitted to prove the truth of any matters asserted in that statement falls within the definition of hearsay. *See State v. Latina*, 13 Ohio App.3d 182, 186 (8th Dist.1984); *State v. Tucker,* 2d Dist. Montgomery No. 20956, 2005-Ohio-5227 ¶5-7. Hearsay is generally not admissible as evidence unless it falls within one of a number of clearly defined exceptions. Evid.R. 802-804.

11

{¶41} Mr. Kuhn argues that there was no direct evidence that identified him as the author of the note. He further argues that as none of the hearsay exceptions apply in this matter, it was error for the magistrate to admit the note. Ms. Kuhn argues that the circumstances surrounding the note corroborate its authenticity and its author, such that the note is admissible as an admission by a party opponent under Evid.R. 801(D)(2).

{¶42} The hurdle a proponent of a document must overcome in order to properly authenticate is not great. *State ex rel. Montgomery v. Villa,* 101 Ohio App.3d 478, 484-485 (10th Dist.1995). With respect to a document attributed to a defendant, the prosecution need only provide a rational basis from which the trier of fact could infer that the document was properly attributed to him. *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir.1990). Establishing authenticity is not on a par with more technical evidentiary rules. There need be only a prima facie showing of authenticity, not a full argument on admissibility. *Montgomery,* 101 Ohio App.3d at 484-485, quoting *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir.1994).

{¶43} The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A). The rule then provides the following pertinent examples of authentication or identification: distinctive characteristics and the like: appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances connecting it with the alleged speaker. Evid.R. 901(B)(4).

{¶44} The circumstances surrounding the unsigned note admitted in this case include:

{¶45} The note was found in Mr. Kuhn's motel room;

{¶46} The note specifically mentions Mr. Kuhn's wife and daughter by name;

{¶47} The note alludes to a difficult domestic situation;

{¶48} The note appears to have blood on it (Mr. Kuhn was bleeding when the police arrived);

{¶49} The note was written on the inside of a cardboard beer case;

{¶50} The motel room was strewn with empty beer cans;

{¶51} The note has all the indicia of a suicide note;

{¶52} There were packages of over-the-counter sleeping pills in the room;

{¶53} Mr. Kuhn was found in a dissociated state and unresponsive.

{¶54} Additionally, after the note had been admitted into evidence, Mr. Kuhn testified that the handwriting was "definitely similar" to his printing. There was sufficient evidence presented to support the magistrate's decision to admit the note into evidence. The totality of the facts and circumstances surrounding the note and its contents establish distinctive characteristics sufficient to authenticate it. As there was sufficient evidence in the record to establish that the note was written by Mr. Kuhn, it was admissible under Evid.R. 801(D)(2) as an admission by a party opponent. Appellant's second assignment of error is without merit.

{¶55} In his third assignment of error, Mr. Kuhn takes issue with the trial court's three-part order: 1) prohibiting him from possessing, using, or obtaining a deadly weapon and ordering that the revolver confiscated by the Mentor Police Department be forfeited to law enforcement; 2) prohibiting him from using or possessing alcohol and; 3)

13

suspending his parenting time with his children established in the domestic relations case. Specifically, Mr. Kuhn argues that there is an insufficient nexus between these restrictions and the underlying conduct that lead the trial court to issue the DVCPO.

**{¶56}** "In issuing a civil protection order, the trial court may add restrictions, provided they are 'equitable and fair.' R.C. 3113.31(E)(1)(h). 'While R.C. 3113.31 affords trial courts discretion in imposing restrictions corresponding to a (civil protection order), this discretion is not limitless.'" *Hoyt, supra*, at ¶67, quoting *Maag v. Maag,* 3d Dist. Wyandot No. 16-01-16, 2002 Ohio App. LEXIS 1409, *9 (Mar. 28, 2002). This court has held that "'restrictions must bear a sufficient nexus to the conduct that the trial court is attempting to prevent.'" (Citation omitted.) *Sistek v. Gredence,* 11th Dist. Lake No. 2005-L-212, 2006-Ohio-4169, ¶36.

**{¶57}** Mr. Kuhn argues that the order prohibiting him from possessing, using, or obtaining a deadly weapon for the duration of the DVCPO and the order that his revolver be forfeited is excessive because the revolver was not used to threaten anyone. He further argues that even though the revolver was found in his truck, this is not evidence of his intent to use the weapon. He states that he was living out of his truck and merely keeping all of his possessions in it. We find neither argument compelling.

**{¶58}** The magistrate determined that the evidence showed that Ms. Kuhn was in danger of domestic violence. The magistrate also held that there was sufficient evidence that Mr. Kuhn entertained thoughts other than simply hurting himself. In his note, Mr. Kuhn specifically mentions driving by his wife's house several times and that he "thought seriously about getting even, and taking Michelle with me." The fact that a

14

loaded revolver (with extra bullets) was found in his truck – the vehicle Mr. Kuhn used to drive by his wife's house several times – is significant.

{¶59} We find that the trial court correctly determined that Mr. Kuhn placed his wife in fear of his attempting to cause bodily injury as well as placing her, by threat of force, in fear of imminent serious physical harm. Having made this determination the trial court was not required to turn a blind-eye to the danger imposed by Mr. Kuhn owning or possessing a deadly weapon. That a threat was evidenced and a loaded firearm was found in his truck is a sufficient nexus for the trial court's prohibition against Mr. Kuhn owning or possessing a deadly weapon.

{¶60} Additionally, the record shows that Mr. Kuhn was involuntarily committed at North Coast Psychiatric Facility for nearly a month after he was found by the police. Mr. Kuhn testified that the tests conducted at North Coast proved that he was normal. A month-long involuntary commitment would seem to contradict this diagnosis.

{¶61} Mr. Kuhn's explanation that his revolver was only found in his truck because he was living out of his automobile is simply not credible. His parents testified that he was living with them. Specifically, his father testified that his son did not return home on the night of the incident at the motel.

{¶62} Next Mr. Kuhn argues that there is not a sufficient nexus between the prohibition that he not use or possess alcohol and the underlying conduct that lead to the protection order. He argues that there was no evidence that he was under the influence of alcohol when any of the alleged threats were made. Essentially, Mr. Kuhn is arguing that there is no evidence in the record that he consumed alcohol *before* writing the note found by police.

15

{¶63} Mr. Kuhn was found by police in a dissociated state, laying in the fetal position, black and blue with dried blood on his face. His hotel room was strewn with empty beer cans and multiple boxes of over-the-counter sleeping pills. The note found by police was written on the inside flap of a cardboard beer case. Under these circumstances it was reasonable for the trial court to conclude that alcohol played a role in this incident and to include a prohibition against Mr. Kuhn using or possessing it.

{¶64} Lastly, Mr. Kuhn objects to the trial court's suspending his parenting time until he attends anger management and obtains a full psychological examination. The trial court, while clearly and justifiably concerned about Mr. Kuhn's behavior, provided him with a road map to obtain parenting time with his children—that is, to complete anger management counseling and undergo a full psychological evaluation. Given our finding that Mr. Kuhn posed a threat to Ms. Kuhn and the children, the imposition of conditions to be satisfied before reinstating Mr. Kuhn's supervised parenting time, are reasonable under the circumstances.

{¶65} The third argument raised in Mr. Kuhn's third assignment of error lacks merit.

{¶66} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed. It is the further order of this court that costs are to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.

16