[Cite as *State v. Moore*, 2011-Ohio-5830.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96206**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAVELLE MOORE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541111

**BEFORE:** Cooney, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** November 10, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

David M. King
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: T. Allan Regas
Alison Foy
Norman Schroth
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Lavelle Moore ("Moore"), appeals his conviction for possession of crack cocaine. We find no merit to the appeal and affirm.

{¶ 2} In September 2010, Moore was charged with drug trafficking, drug possession of between 10 and 25 grams of crack cocaine, and possession of criminal

tools, with forfeiture specifications. The case proceeded to a jury trial at which the following evidence was presented.

{¶ 3} Detective Robert Martin ("Martin") of the Cleveland police vice unit, testified that on the evening of August 18, 2010, while he was conducting surveillance outside a known "drug house" in the area of East 117th Street and Sellers Avenue, he observed a male standing at the driver's window of a Chrysler Pacifica holding a plastic baggie. Martin testified that, based on his years of training and experience, this activity was indicative of drug trafficking. As he approached the Pacifica, he heard someone yell, "vice." Martin observed the man close his hand around the bag and walk quickly around the Pacifica to the passenger door before the vehicle drove off.

{¶ 4} Martin followed the vehicle and called take-down units that stopped the Pacifica approximately one mile away. Officer Brian Moore, who conducted the stop with Officer Joseph Hageman ("Hageman"), testified that as he approached the passenger side of the vehicle, he observed Moore in the front passenger seat in an awkward position with his back turned to the window and his arms reaching toward the floor. After ordering Moore out of the car, Hageman observed a piece of clear plastic material sticking out between the car's molding and a plastic flap alongside the center console near the floor. Hageman pulled the plastic, and a bag of crack cocaine fell out. Police patted down Moore and found $815 in Moore's front pocket, including a $100 bill and twenty-eight $20 bills.

{¶ 5} Moore's brother, Rashaondell Moore ("Rashaondell"), testified for the defense, claiming the crack belonged to him. He testified that Lisa Adams ("Adams") picked him up on her way to pick up Moore from work and that Adams had no idea that he possessed a bag of crack. He explained that he was sitting in the front passenger seat and Moore was in the back seat when Adams dropped him off at the crack house on East 117th Street. When he heard someone yell "vice," he hid the cocaine behind the panel alongside the center console before exiting the car and disappearing into the neighborhood. Police stopped the car minutes later and found Moore in the front passenger seat in close proximity to the drugs.

{¶ 6} The jury found Moore guilty of possession of crack cocaine but not guilty of drug trafficking or possession of criminal tools. The court sentenced Moore to seven years in prison, a $15,000 fine, and three years of mandatory postrelease control. Moore raises four assignments of error on appeal.

## Manifest Weight of the Evidence

{¶ 7} In the first assignment of error, Moore argues his conviction is against the manifest weight of the evidence. He contends the State witnesses were not reliable and the evidence demonstrated that Rashaondell placed the drugs behind a floor panel in the car without his knowledge.

{¶ 8} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78

Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541. When reviewing a claim that the judgment was against the manifest weight of the evidence, we review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. Id. at 387.

{¶ 9} Moore was convicted of drug possession in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."

{¶ 10} Although Rashaondell testified that he owned the cocaine found in the vehicle, the record contains overwhelming evidence supporting Moore's conviction. First, Martin testified that he observed a male holding a plastic baggie up to the driver's window of the Pacifica, which was parked across the street from a known crack house. Martin could clearly see the plastic baggie because the Pacifica was parked directly beneath two street lights. Martin's suspicions of drug activity were corroborated when someone yelled "vice," and the man with the baggie immediately went around the car to the passenger side of the vehicle as if to evade detection.

{¶ 11} Although Martin did not actually see Moore get into the Pacifica because his view was blocked by the rear of the vehicle, he testified that there was no one left in the street when the vehicle drove away. When the take-down units stopped the vehicle minutes later, police observed Moore reaching down to the location where the drugs were found. The jury had the opportunity to view the plastic flap behind which the drugs were hidden, and could see that the flap could be easily removed and replaced. The jury could reasonably infer that Moore attempted to hide the cocaine behind the flap when police stopped the vehicle.

{¶ 12} Even if Rashaondell "owned" the drugs, there was competent, credible evidence demonstrating that Moore knew the drugs were in the car, and that he was able to control the "premises" where the drugs were located. Therefore, Moore's conviction for the possession of crack cocaine is supported by the manifest weight of the evidence.

{¶ 13} Accordingly, the first assignment of error is overruled.

### The *Howard* Charge

{¶ 14} In his second assignment of error, Moore argues the trial court improperly instructed the deadlocked jury by failing to comply with the requirements set forth in *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188. Moore contends the trial court's instruction coerced the jury to reach a unanimous verdict that might otherwise have remained deadlocked and necessitated a mistrial.

{¶ 15} Jury instructions are within the trial court's discretion. *State v. Guster* (1981), 66 Ohio St.2d 266, 271, 421 N.E.2d 157. Therefore, a trial court's decision whether to give an instruction pursuant to *Howard* will not be disturbed absent an abuse of discretion.

{¶ 16} In *Howard*, the Ohio Supreme Court set forth the proper instruction the trial court must give a jury that has declared itself deadlocked. The "*Howard* charge" must be balanced, neutral, and advance the following two goals: (1) encourage a unanimous verdict only when one "can conscientiously be reached," leaving open the possibility of a hung jury and resulting mistrial; and (2) call for all jurors to reevaluate their opinions, not just the jurors in the minority. Id. However, the charge must remind the jury of its purpose — to reach a unanimous decision. Id. at 24.

{¶ 17} The record indicates that it was 6:30 p.m. on a Friday when the jurors advised the court they were at an impasse. The jury began deliberations at approximately 2:15 p.m. that afternoon and had been deliberating for approximately four hours. Although trial counsel requested the court give a *Howard* charge, the court reminded counsel that deliberations had only just begun that afternoon and refused to give a *Howard* charge at this stage of deliberations. Instead, the court instructed, over objection:

> "Well, ladies and gentlemen, you just began your job this afternoon. So some juries deliberate for weeks. This is jury duty. This is deliberation. A jury's work is completed when there is a verdict reached on all the counts by all the jurors

when you reached a verdict. It's a unanimous system. It takes work. So have a good weekend, and we will see you Monday morning. This court is adjourned."

{¶ 18} Although some courts have held that a *Howard* charge after four hours of deliberations is not premature, the appropriateness of the *Howard* charge depends on whether the jury is truly deadlocked. Whether the jury is irreconcilably deadlocked is a "discretionary determination" for the trial court to make. *Arizona v. Washington* (1978), 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717, fn. 28. In making such a determination, the court must evaluate each case based on its own particular circumstances. *State v. Mason* (1998), 82 Ohio St.3d 144, 167, 694 N.E.2d 932. There is no bright-line test to determine what constitutes an irreconcilably deadlocked jury. *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶37.

{¶ 19} The trial judge did not believe the jury was truly deadlocked. The judge reminded counsel that they did not "have enough information on whether they reached verdicts on some of the counts and not on others." He stated that he did not want to rush them because it was late on Friday. He told counsel: "It's Friday afternoon. A couple people might be in a hurry, a couple of people might have places to go, things to do. They are coming back Monday."

{¶ 20} Under these circumstances, we do not find the court's instruction improper. The court merely explained that deliberations often take a long time and reminded them of their duty to try to reach a unanimous verdict. Indeed, the *Howard* charge itself is

intended to challenge the jury to reach a consensus. *State v. Robb*, 88 Ohio St.3d 59, 81, 2000-Ohio-275, 723 N.E.2d 1019.

{¶ 21} Accordingly, the second assignment of error is overruled.

## Constructive Possession

{¶ 22} In the third assignment of error, Moore argues the trial court abused its discretion when it instructed the jury on "constructive possession." In his fourth assignment of error, he argues his trial counsel was ineffective for failing to object to an erroneous instruction on "constructive possession." We address these assigned errors together because they are closely related.

{¶ 23} Moore contends the court's definition of "constructive possession" conflicts with the statutory definition of "possession" set forth in R.C. 2925.01(K), which provides:

> "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 24} In defining "constructive possession," the court stated:

> "Constructive possession is also sufficient to prove possession. Possession may not be inferred from mere access to the thing or substance; however, a person constructively possesses a thing or substance when he knowingly exercises, or is able to exercise, dominion or control over the thing or substance, or over the premises on which the thing or substance is found or concealed, even though the thing or substance is not in his physical possession."

{¶ 25} The Ohio Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, cert. denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130. In *State v. Chandler*, Cuyahoga App. Nos. 93664 and 93665, 2011-Ohio-590, this court further defined "constructive possession" as "knowingly exercising dominion and control over an object, even though that object may not be within one's immediate physical possession." Id. at ¶55, citing *Hankerson*. Thus, to establish "constructive possession," the State must prove that the defendant: (1) knew the contraband was present on the premises and (2) that the defendant knowingly exercised control over the contraband, even though it may not be within his immediate physical possession.

{¶ 26} This court has previously held that language defining "constructive possession" identical to the court's definition quoted above is permissible and does not constitute an abuse of discretion. See, e.g., *State v. Santiago*, Cuyahoga App. No. 95333, 2011-Ohio-1691; *State v. Warren*, Cuyahoga App. No. 87726, 2006-Ohio-6415; *State v. Powell*, Cuyahoga App. No. 82054, 2003-Ohio-4936; *State v. Loper*, Cuyahoga App. Nos. 81297, 81400, 81878, 2003-Ohio-3213. However, the trial court asked the jurors if they had any questions about possession and one juror requested further instruction on "the nuances of constructive versus actual" possession. The court responded by

repeating the instruction, which included the requirement that the defendant control the premises containing the contraband, and further explained:

> "Knowledge. You don't have to have ownership but knowledge. So knowingly. Knowledge of illegal goods on one's property is sufficient to show constructive possession. However, the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession."

{¶ 27} We find the court's instruction is an accurate statement of the law and was not an abuse of discretion. Since the instruction was permissible and appropriate, trial counsel was not ineffective for failing to object to it.

{¶ 28} Therefore, the third and fourth assigned errors are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

PATRICIA ANN BLACKMON, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS (WITH SEPARATE OPINION ATTACHED).

MELODY J. STEWART, J., DISSENTING:

{¶ 29} I dissent from the majority's resolution of the second assignment of error. I find that the trial court's instruction to the jury was improper because the court did not leave open the option of the jury being deadlocked, or remaining deadlocked if indeed they were. The instruction, therefore, misstated the law.

{¶ 30} As the majority notes, deciding whether to give a *Howard* instruction is within the trial court's discretion. Likewise, the decision to issue a supplemental instruction is also within the court's discretion. *State v. Bolling* (July 19, 2001), 8th Dist. No. 78632. I agree that the trial court did not err with regard to either of these decisions. And, I admit, a *Howard* instruction may not have been warranted in this case. But the trial court, nevertheless, decided to instruct the jurors on their duties in response to a question about being deadlocked. That instruction was, at least, *Howard*-like in nature or, at best, a modified *Howard* instruction. Whether the court's instructions bear the *Howard* moniker or simply invoked the tenets of *Howard*, they were supplemental instructions given to the jury regarding their task as jurors. Because of the nature of that instruction, the trial court was still required to have the instruction comport with the balance and neutrality factors set forth in *Howard*. It did not.

{¶ 31} The law encourages jurors not to deadlock and likewise permits a court's urging jurors to make reasonable efforts to decide a case. *State v. Gary*, 3d Dist. No. 5-99-51, 2000-Ohio-1679. However, the court's urging can be done only with the express proviso that jurors decide the case "if they can conscientiously do so." *Howard*, supra, 42 Ohio St.3d at 19, 24.

{¶ 32} In response to the jury's questions on whether different votes on a particular count meant that they were hung, and "Do we keep going until we all agree ***," the court stated: "Well, ladies and gentlemen, you just began your job this afternoon. So some juries deliberate for weeks. This is jury duty. This is deliberation. A jury's work is completed when there is a verdict reached on all the counts by all the jurors when you reached a verdict. It's a unanimous system. It takes work. So have a good weekend and we will see you Monday morning." This instruction is not balanced and neutral. It does not encourage a unanimous verdict if one can be conscientiously reached. It simply requires a unanimous verdict.

{¶ 33} The majority characterizes the instruction as "the court merely explain[ing] that deliberations often take a long time and remind[ing the jury] of their duty to try to reach a unanimous verdict." The majority, however, neglects to interpret the statement, "[a] jury's work is completed when there is a verdict reached on all counts by all jurors ***." Important to note also is that the trial court never really answered the jury's questions about being deadlocked. The court was no doubt being cautious to not encourage a hung jury. But in doing so, it gave an instruction that misstated the law. The court elected to give this instruction even after defense counsel implored the court to use the proper balancing language set forth in *Howard*.

{¶ 34} During discussions between the court and both sides regarding the jury questions, the following exchange took place:

{¶ 35} "The Court:   I'm asking what you want [the jury to be told].

{¶ 36} "***

{¶ 37} "[Defense Counsel]:   I want you to say, please, that *** [w]e really need you to make your best effort to arrive at a verdict without disturbing your individual conscience.

{¶ 38} "***

{¶ 39} "The Court: *** I was going to say, the jury just began its job this afternoon.   Come on back Monday.   The jury's work is not complete until they reach a unanimous verdict.

{¶ 40} "[Defense Counsel]:   That's what I have a problem with.

{¶ 41} "The Court:   You want me to tell them they have a hung jury?

{¶ 42} "[Defense Counsel]:   No, I don't want a hung jury.

{¶ 43} "The Court:   No judge in their right mind is ever going to mention the option of a hung jury to a jury.   Has anybody ever instructed hung jury?   Please let me see that instruction.

{¶ 44} "[Defense Counsel]:   I'm saying in the *Allen*[1] or *Howard* charge, it says, don't disturb your individual conscience.

---

[1] *Allen v. United States* (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

**{¶ 45}** "The Court: We're nowhere near there. We'll give the appropriate charge."

**{¶ 46}** The court apparently believed that the factors enunciated in *Howard* did not need to be honored because it had decided not to give the full *Howard* instruction.

**{¶ 47}** In a case with almost identical facts regarding this issue, this court in *State v. Bolling*, supra, found that the trial court erred in telling jurors that a unanimous verdict was required of them. In that case, after deliberating for one day, the jury asked the court, "'Must we have a decision on all counts, or can one or two counts be undecided?' The trial court, without advising the parties of this communication from the jury or the trial court's response, answered the jury question by writing on the same communication it had received from the jury, 'A decision is required on all counts. Continue to deliberate to the best of your ability.'" The defendant argued that the supplemental instruction "improperly emphasized the necessity to reach a verdict on each count, thereby coercing the guilty verdicts***." Id. at 4. Finding plain error, both the majority and concurring opinions agreed that the trial court's instruction was one *Howard* specifically seeks to guard against, noting "[a] supplemental instruction must not be coercive by stressing that the jury must reach a verdict, a clear misstatement of law." Id. at 5 (Cooney, J., concurring), quoting *Howard*, 42 Ohio St.3d at 23.

**{¶ 48}** I would sustain this assignment of error, and reverse and remand.