[Cite as *State v. Yates*, 2012-Ohio-919.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96774

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARCONAIL YATES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531240

**BEFORE:** Boyle, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 8, 2012

**ATTORNEY FOR APPELLANT**

Kelly A. Gallagher
Post Office Box 306
Avon Lake, Ohio   44012

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Brent C. Kirvel
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Marconail Yates, appeals his convictions, challenging the sufficiency and manifest weight of the evidence pertaining to the gang specifications, the conduct of the prosecutor, and various evidentiary and procedural rulings of the trial court. We find all the arguments unpersuasive and affirm.

Procedural History and Facts

**{¶2}** On November 7, 2009, on an early Saturday afternoon, Brandon Young, Shaquille Young, Robert Norton, and TeShawn Cromity were walking on the sidewalk on East 186th Street toward Melville Street in Cleveland, when a dark purple, two-door Chevy Berretta drove up to the boys and stopped. The front passenger yelled out the window and exchanged words with Shaquille Young, who had stepped toward the vehicle. The front passenger then pulled out a gun and started firing several shots. The boys immediately started running. Both Young brothers were shot and Cromity was grazed with a bullet. Immediately following the shootings and while on the scene, Shaquille told the police that he recognized three of the occupants in the vehicle but knew only their "street" names: "Lay Lay, Marco from 152nd, and Marco from 156th."

**{¶3}** Brandon died at the hospital days after the shooting. The police later arrested all of the occupants of the vehicle: DeMarco Millsap, Layton White, Michael Tate, and Marconail Yates. Millsap, White, and Tate all eventually disclosed that Yates was the shooter and testified against him at trial. Specifically, they testified that Millsap

was driving Yates's vehicle and that Yates was sitting in the front passenger seat; White and Tate were seated in the backseat. According to Millsap, Yates told him to turn down the street and stop in front of the four victims walking down the street. Yates had a gun on his lap and after exchanging words with Shaquille, Yates started shooting from the vehicle.

{¶4} The state additionally presented several witnesses who corroborated the co-defendants' testimony, placing the vehicle and its occupants at the scene. The state also introduced postings from a MySpace account named "Murdaman Flocka" that the state established was created and used by Yates. The postings on the account connected Yates to the shootings and disclosed his feelings of betrayal and being "pissed off" by people talking to the police.

{¶5} Following a jury trial, Yates was convicted of (1) one count of murder, (2) three counts of attempted murder, (3) four counts of felonious assault, (4) one count of discharge of a firearm near prohibited premises, and (5) one count of improperly handling of a firearm in a motor vehicle. He was likewise convicted of the accompanying specifications to the counts, including the firearm and gang specifications. The trial court separately found Yates guilty of one count of having a weapon under disability. The trial court later sentenced Yates to 38 years to life in prison.

**{¶6}** Yates appeals, raising nine assignments of error that we will address out of order for ease of discussion. We will also discuss the evidence presented at trial in more detail in our resolution of these assignments of error.

<u>Gang Specifications: Sufficiency and Manifest Weight of the Evidence</u>

**{¶7}** In his third and fourth assignments of error, Yates argues that the state failed to present sufficient evidence to support the gang specifications attached to the counts. He further argues that his conviction on the gang specifications is against the manifest weight of the evidence. We disagree.

**{¶8}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> In reviewing a claim challenging the manifest weight of the evidence, [t]he question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal quotes and citations omitted.) *Leonard* at ¶ 81.

{¶9}   Yates was found guilty of the criminal gang activity specification, i.e., R.C. 2941.142, in counts one through eight of the indictment, which stated as follows:

{¶10} "The Grand Jurors further find and specify that the offender committed the felony that is an offense of violence while participating in a criminal gang as defined in Section 2923.41 of the Ohio Revised Code."

{¶11} The state offered the following evidence at trial in support of the gang specifications:

{¶12} Detective Legg of the Cleveland Police Department testified that he has been investigating the Lakeshore Boys, a known gang, since the latter part of 2008.   He indicated that the Lakeshore Boys generally "tagged" their area —   meaning, they would spray paint their area as a means to mark their territory.   According to Det. Legg, the Lakeshore Boys have also been involved in several crimes in the area, including a "home invasion" off of East 185th Street.   He further described other typical criminal gang activity, which included "shootings, drug activity, drug sales, and a lot of residential burglaries."

{¶13} Two members of the Lakeshore Boys testified at trial and corroborated Det. Legg's testimony as to some of the criminal activity of the gang.   Specifically, Michael Tate, a juvenile, testified that he sold drugs as a member of the Lakeshore Boys.   Similarly, DeMarco Millsap testified that his membership in the gang arose as a result of his "claiming the neighborhood and fighting."   Millsap reiterated that being part of gang

involved battling other gangs and that it was not necessary to know the members of other gangs to have an "aggression" toward them.

{¶14} Millsap, along with Layton White, also testified that Yates was a member of the Lakeshore Boys.

{¶15} Millsap, White, and Tate all testified that on the day of the shooting, they were "riding around" in Yates's car in their neighborhood. Several other eyewitnesses presented at trial also testified that they observed the vehicle with all four occupants patrolling the area. Indeed, one witness who lived on East 186th Street testified that, despite planning on going to his brother's house, he immediately returned inside his home after observing Yates's vehicle driving down the street. He testified that he "didn't have a good feeling" and that "it just looked suspicious." Shortly after entering his house, he testified that he heard the gunshots.

{¶16} Millsap, who was driving Yates's car, testified that he drove down East 186th Street upon Yates's instruction. At the time that Yates ordered Millsap to turn, the victims were walking down the street. These victims were not members of the Lakeshore Boys. Millsap further testified that Yates had a gun on his lap. After turning down the street, Yates ordered Millsap to stop the vehicle, allowing Yates to exchange words. Yates then pulled out the gun and started shooting. Following the shooting, Millsap sped out of the area.

*Membership in a Criminal Gang*

{¶17} Yates contends that the jury's finding that he was part of a "criminal gang" is not supported by sufficient evidence or the weight of the evidence. Yates argues that the state failed to produce evidence that he "has ever been found criminally liable as an aider or abettor to a crime committed by alleged fellow gang member." He further argues that the evidence was insufficient to establish the Lakeshore Boys as a criminal gang and that he was a member. We find Yates's first argument misplaced and the latter arguments without merit.

{¶18} R.C. 2923.41(A) broadly defines a criminal gang as a formal or informal group of three or more persons to which all of the following apply: (1) one of the group's primary purposes is the commission of one or more offenses designated in the section, which includes, among others, a felony, an offense of violence, and trafficking in marijuana; (2) the group has "a common name or one or more common, identifying signs, symbols, or colors"; and (3) the persons in the group "individually or collectively engage in or have engaged in a pattern of criminal activity." R.C. 2923.41(A)(1)-(3).

{¶19} There is no requirement for the state to prove that Yates was found guilty as an aider or abettor to a crime committed by a fellow gang member. As for the elements stated above, the state presented sufficient evidence of each. First, the state established that "Lakeshore Boys" was a known gang and that the name was representative of the gang's territory. Testimony presented at trial evidenced that membership in the Lakeshore Boys required "fighting" as a means to claim the neighborhood. Tate's

testimony also established that selling drugs was a part of being a gang member. Finally, Det. Legg's testimony coupled with the other gang members established that the Lakeshore Boys have engaged in a "pattern of criminal activity." Specifically, the state presented evidence of separate crimes committed by the Lakeshore Boys since 2008 — ranging from the sale of drugs to as serious as fighting and a "home invasion." *See* R.C. 2923.41(B) (defining "pattern of criminal gang activity").

**{¶20}** Accordingly, construing this testimony in a light most favorable to the state, we find that sufficient evidence exists to support a finding that the Lakeshore Boys are a gang as defined under R.C. 2923.41. As for Yates's manifest weight of the evidence challenge, he merely reincorporates the same arguments raised in support of his sufficiency of the evidence attack. We accordingly summarily overrule this argument.

**{¶21}** Next, Yates argues that the state failed to establish that he was a member of the Lakeshore Boys and that the testimony tying him to the Lakeshore Boys was not credible. Here, two members expressly identified Yates as a member of the Lakeshore Boys. And while Yates contends that their testimony was not credible, the jury is in the best position to weigh credibility. Moreover, given the complete absence of any evidence contradicting the members' claim, we cannot say that the jury "lost its way" in believing this testimony.

*Related to Gang Activity*

**{¶22}** Yates contends that the state failed to present sufficient evidence that "the shooting was related to gang activity." We disagree and find that the state presented sufficient evidence that Yates committed the underlying felonies while participating in a criminal gang. Indeed, the record revealed that the Lakeshore Boys, including Yates, were riding on East 186th Street, patrolling their territory, when they came upon the victims and where Yates exchanged words with Shaquille Young. Accordingly, construing the evidence in a light most favorable to the state, we find that the state satisfied its burden to overcome a Crim.R. 29 motion for dismissal of the gang specifications.

**{¶23}** Yates further broadly asserts that a finding that he committed the underlying felonies while participating in a criminal gang is against the manifest weight of the evidence. But again, Yates relies solely on the sufficiency standard for purposes of attacking the weight of the evidence so we summarily overrule his argument.

**{¶24}** Yates's third and fourth assignments of error are overruled.

### *Howard* Charge

**{¶25}** Yates argues in his fifth assignment of error that the trial court erred in failing to provide the jury with the instruction announced in *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), after the jury indicated to the court that it was at an "impasse" and inquired as to their next step.

**{¶26}** In *Howard*, the Ohio Supreme Court set forth the proper instruction the trial court must give a jury that has declared itself deadlocked. The "*Howard* charge" must be balanced, neutral, and advance the following two goals: (1) encourage a unanimous verdict only when one "can conscientiously be reached," leaving open the possibility of a hung jury and resulting mistrial; and (2) call for all jurors to reevaluate their opinions, not just the jurors in the minority. *Id*. However, the charge must remind the jury of its purpose — to reach a unanimous decision. *Id*. at 24. *See also State v. Moore*, 8th Dist. No. 96206, 2011-Ohio-5830, 2011 WL 5507223, ¶ 16.

**{¶27}** Instead of giving a *Howard* charge, the trial judge instructed the jury as follows:

> Ladies and gentlemen, you have just begun your deliberations this past Friday. This is a new and difficult assignment for you. The process of discussion and deliberation in the jury room is necessarily slow and requires careful consideration and patience. I request that you return to your jury room and review the opinions of each juror to determine whether you have overlooked areas of agreement which could lead to a verdict. You are instructed to continue your deliberations.

**{¶28}** Notably, the trial court gave this instruction without any objection from the state or the defense. We therefore review Yates's assignment of error under the plain error doctrine. *See* Crim.R. 52(B). For a reviewing court to find plain error, there must be a legal error that constitutes an obvious defect in the trial proceedings and one that has affected the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

**{¶29}** Here, we fail to find any error, let alone plain error. The appropriateness of a *Howard* charge depends on whether the jury is truly deadlocked — a determination to be made by the trial court and one that we review only for an abuse of discretion. *Moore*, 8th Dist. No. 96206, 2011-Ohio-5830, 2011 WL 5507223, at ¶15 and 18. The trial court in this case determined that a *Howard* charge was not yet necessary because the jury had only been deliberating for less than two days after hearing two weeks of evidence. The instruction provided by the trial court was appropriate under the circumstances. *See Moore*, 8th Dist. No. 96206, 2011-Ohio-5830, 2011 WL 5507223 (finding that trial court did not abuse its discretion in refusing to provide *Howard* charge and giving similar instruction to the one in this case). Accordingly, we find no plain error and overrule the fifth assignment of error.

MySpace Account

**{¶30}** In his sixth assignment of error, Yates argues that the trial court abused its discretion in allowing the state to introduce postings from a MySpace account because (1) the evidence was highly prejudicial; and (2) the state failed to properly authenticate it.

**{¶31}** The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Absent an abuse of that discretion and a showing of material prejudice, an appellate court will not overturn a trial court's ruling. *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). The abuse-of-discretion standard is defined as "grossly unsound,

unreasonable, illegal, or unsupported by the evidence." *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 18 (2d Dist.), quoting Black's Law Dictionary 11 (8th Ed.2004).

**{¶32}** Over Yates's objection, the trial court admitted postings from a MySpace account that originated on November 14 and ended on November 19; the state presented these postings as belonging to Yates. The name on the account was "Murdaman Flocka," the picture of the account user was of Yates, and the account was created on November 14, 2009 — seven days after the shootings.

**{¶33}** Yates contends that the trial court should have excluded this evidence because the user name of "Murdaman Flocka" was highly prejudicial. The record reflects, however, that even Yates's mother testified that Yates sometimes went by the nickname "Murdaman" — the same name of one of his favorite rappers. The MySpace postings were probative to the state's case — they connected Yates to the shootings and the fact that he felt betrayed by someone speaking to the police. The trial court found that the probative value of this evidence outweighed its prejudicial effect. And given that there was other testimony of Yates's having the nickname of "Murdaman," we cannot say that the trial court abused its discretion in allowing the MySpace postings to be admitted.

**{¶34}** Next, Yates contends that the state failed to properly authenticate the MySpace posting and establish that the postings belonged to Yates. He argues that the trial court abused its discretion in allowing the evidence. We disagree.

**{¶35}** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by introducing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A); *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, 2009 WL 1395857, ¶ 17. However, the "sufficient to support a finding standard" is not rigorous, and the threshold of admissibility articulated in it is low. *State v. Steele*, 12th Dist. No. CA2003-11-276, 2005-Ohio-943, 2005 WL 516526, ¶ 115, citing *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991). Indeed, the evidence establishing authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be, and "conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury." *Steele*, citing *State ex rel. Montgomery v. Villa*, 101 Ohio App.3d 478, 484-85, 655 N.E.2d 1342 (10th Dist.1995).

**{¶36}** Here, the state presented a representative from MySpace.com that testified as to the creation of the MySpace account, stating that the account was established on November 14, 2009 and that the creator used the email address of "marco_yates@yahoo.com." The state further presented testimony from a witness,

whose photograph was on the MySpace page as being a friend of Yates, that this was Yates's MySpace account. The profile information, the picture of Yates as the account holder, and the use of the nickname were all also indicative of this being Yates's account. Based on the evidence introduced in support of the authenticity of the postings, we cannot say that the trial court abused its discretion in finding that the admission of the MySpace postings complied with Evid.R. 901. *See Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, 2009 WL 1395857. Indeed, Yates's contention that anyone could have created the postings goes to the weight of the evidence that the jury should consider. *Id.*

{¶37} The sixth assignment of error is overruled.

## Hearsay and *Crawford*

{¶38} In his seventh assignment of error, Yates argues that the trial court erroneously allowed Officer Edward Csoltko to testify as to what the victim, Shaquille Young, told him on the scene regarding the names of the perpetrators and their motives. He claims that the admission of this hearsay testimony violated his Sixth Amendment right to confrontation.

{¶39} The United States Supreme Court has held that the right to confrontation is violated when a hearsay statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The

U.S. Supreme Court, however, has excluded from the definition of "testimonial," those "statements * * * made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶40} The state contends that the officer's testimony as to what the victim told him regarding the names of the perpetrators were admissible under the "ongoing emergency" doctrine. While we agree that the names of the perpetrators would fall outside the meaning of "testimonial" as contemplated by *Crawford*, we find that Shaquille Young's statements regarding motive constitute hearsay that is "testimonial in nature." But the record reveals that Shaquille Young separately testified at trial. Thus, even assuming that the admission of this evidence was erroneous, we find that it was harmless and overrule the seventh assignment of error.

Identification Testimony

{¶41} In his first assignment of error, Yates argues that the trial court erred in denying his motion to suppress eyewitness identification and "permitting a fundamentally unreliable identification in violation of due process." Specifically, Yates contends that the trial court should have suppressed the pretrial identification that Shaquille Young made in a photo array and his subsequent in-trial identification of Yates because the identification procedure was unduly suggestive. But our review of the record reveals

that Yates never filed a motion to suppress Shaquille Young's pretrial identification of him. He therefore failed to comply with the requirements of Crim.R. 12(C)(3) and (D) to support the exclusion of this evidence. And while Yates's counsel indicated to the court that there *may* be an issue with the reliability of Young's identification prior to the start of the trial, defense counsel apparently abandoned the argument and never raised the issue again or requested the suppression. Under Crim.R. 12(H), he has waived all but plain error on appeal. *See State v. Daniels*, 8th Dist. No. 93545, 2010-Ohio-3871, 2010 WL 3278778; *State v. Taylor*, 9th Dist. No. 22882, 2006-Ohio-2041, 2006 WL 1085710, ¶ 17.

{¶42} We find no plain error by Shaquille Young's identification. Indeed, Young provided the police with Yates's street name prior to making any identifications. But even assuming that Young's identification was not reliable, the record contained overwhelming evidence of Yates's guilt. All three of the other co-defendants, who were occupants in the vehicle, positively identified Yates as the shooter.

{¶43} The first assignment of error is overruled.

Search and Seizure

{¶44} In his eighth assignment of error, Yates argues that the information contained on his MySpace account was private, and therefore the state's presentation of this evidence constituted an unreasonable search and seizure. This argument lacks merit. Although Yates objected to the admission of this evidence as being overly

prejudicial and not properly authenticated, he never moved to suppress this evidence on Fourth Amendment grounds. He therefore has waived this argument on appeal. *See Daniels*, *supra*, 2010-Ohio-3871, ¶17. And we find no plain error by its admission. Notably, Yates cites absolutely no authority in support of his claim that information contained on a public social networking site violates Fourth Amendment principles. We find no basis in the law to support this claim.

**{¶45}** The eighth assignment of error is overruled.

Prosecutorial Misconduct

**{¶46}** In his second assignment of error, Yates contends that the prosecutor improperly elicited testimony that (1) unfairly attacked Yates's character, (2) improperly shifted the burden of proof onto Yates, (3) revealed plea negotiations between the state and Yates, and (4) made improper comments during opening and closing arguments. He argues that this evidence deprived him of a fair trial.

**{¶47}** The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'"

*State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶48}** Therefore, our duty is to consider the trial record and to determine whether Yates's substantial rights were violated, thereby depriving him of a fair trial. We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously. *State v. Williams*, 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910 (1988).

*Alleged Character Evidence*

**{¶49}** Yates first contends that the prosecutor improperly questioned witnesses regarding the name on his alleged MySpace account: "Murdaman Flocka." He argues that this evidence constituted inadmissible character evidence that the prosecutor should not have introduced. We disagree. We find no misconduct by the prosecutor in asking witnesses the nicknames of Yates as well as the name of Yates's MySpace account. Indeed, this testimony was relevant to establishing the authenticity of Yates's MySpace account. Notably, through cross-examination, defense counsel also questioned witnesses regarding Yates's nickname of "Murdaman." The defense established that "Murdaman" was a known rapper who Yates admired and that he used this nickname prior to the date of shooting.

{¶50} We likewise cannot say that the prosecutor engaged in any misconduct while questioning Yates's mother, Sonya Yates, regarding taped telephone conversations between herself and Yates. Yates argues that the prosecutor purposely elicited testimony regarding his bad character in the following questioning of his mother:

[Prosecutor] Q: What does it mean by beating him to the punch?

A: I'm trying to explain that.

Q. All right.

The Court: Answer the question ma'am, if you can.

A. Okay. Basically, my son didn't want to tell what he knew. So I told him he needed to tell before anybody try to blame him, because this is like the fifth time somebody done blamed him for a murder, and they found out that each time he was locked up, and he wasn't able to have committed it. This is the fifth time.

{¶51} Notably, defense counsel never objected to this question. Nor did defense counsel move for the answer to be stricken or a curative instruction provided. Further, prior to Sonya Yates's testimony, the trial court granted the state's motion to treat Sonya Yates as an adverse witness. Here, we cannot fault the prosecutor for a nonresponsive answer by an adverse witness.

*Shifting of the Burden of Proof*

{¶52} Next, Yates argues that the prosecutor improperly shifted the burden of proof by implying that the defense has to call in witnesses to defend Yates. Specifically, while questioning Sonya Yates, the prosecutor specifically asked her if defense counsel was going to call back Mike Tate as a witness to corroborate her claim that Mike Tate called her house to apologize for lying on the witness stand during trial. This was an inappropriate question by the prosecutor. But the trial court immediately sustained defense counsel's objection and provided a curative instruction. This isolated incident can hardly be said to have denied Yates a fair trial.

*Plea Negotiations*

{¶53} Yates further contends that the prosecutor, in violation of Evid.R. 410, improperly questioned Sonya Yates regarding plea negotiations between himself and the state. Evid.R. 410(A)(5) prohibits admission of "any statement made in the course of plea discussions in which counsel for the prosecuting attorney or for the defendant was a participant and that do not result in a plea of guilty or that result in a plea of guilty later withdrawn." But we disagree with Yates's characterization of the prosecutor's questioning; it did not go to the issue of plea negotiations. Instead, the prosecutor was questioning Sonya Yates regarding a taped conversation between herself and Yates wherein Yates revealed that he was going to try for a plea of "manslaughter or something." In fact, the record reveals that there were never any plea negotiations between the state and Yates. Therefore, Evid.R. 410 is inapplicable.

*Opening and Closing Statements*

**{¶54}** Lastly, Yates quotes several excerpts from the prosecutor's opening and closing statements in support of his claim of prosecutorial misconduct. Yates, however, fails to raise any argument as to why these statements constitute prosecutorial misconduct or how such comments deprived him of a fair trial. *See* App.R. 16(A)(7); App.R. 12(A)(2). And we fail to find any. Moreover, the trial court specifically instructed the jury that opening statements and closing arguments of counsel were not evidence, and that the jury was to decide the case solely on the evidence presented.

**{¶55}** Accordingly, based on the record before us, we cannot say that Yates was denied a fair trial.

**{¶56}** The second assignment of error is overruled.

<u>Indictment</u>

**{¶57}** In his final and ninth assignment of error, Yates argues that his conviction for discharge of firearm on or near prohibited premises, a violation of R.C. 2923.162(A)(3), cannot stand because the indictment was defective. He contends that the defective indictment failed to sufficiently inform him of the charges against him because it did not identify the specific person that "he caused serious physical harm to." The serious physical harm to a person element elevates the offense to a first degree felony under R.C. 2923.162(C)(4). Because Yates raises this argument for the first time on appeal, he has waived all but plain error. *State v. Horner,* 126 Ohio St.3d 466,

2010-Ohio-3820, 935 N.E.2d 26, ¶ 46; *State v. Myers*, 2d Dist. No. 1643, 2006-Ohio-1604, 2006 WL 827341, ¶ 45 ("defects to an indictment, such as * * * vagueness, must be raised prior to trial or the issue is waived"). *See also* Crim.R. 12(C)(2); R.C. 2941.29.

**{¶58}** Here, the indictment charging Yates with a violation of R.C. 2923.162 for discharge of a firearm on or near "prohibited premises" mirrored the statutory language. *Horner*. We find no basis to conclude that the indictment constituted plain error.

**{¶59}** Accordingly, the final assignment of error is overruled.

**{¶60}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR