STATE ex rel. MONTGOMERY, Atty. Gen., Appellant,

v.

VILLA, d.b.a. All–America Telemarketing Blue
Ribbon Entertainment et al., Appellees.

[Cite as *State ex rel. Montgomery v. Villa* (1995), 101 Ohio App.3d 478.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE01–46.

Decided Feb. 28, 1995.

*Betty D. Montgomery*, Attorney General, *Noelle T. Tsevodos* and *Donna M. Rogers*, for appellant.

*Schwartz, Kelm, Warren & Rubenstein, Juan Jose Perez* and *John A. Gleason*, for appellees William Villa and John Howe.

DESHLER, Judge.

This is an appeal by plaintiff, the Attorney General of Ohio, from a judgment of the Franklin County Court of Common Pleas, dismissing plaintiff's complaint and entering judgment in favor of defendants, William Villa and John Howe.

On June 23, 1992, plaintiff filed a complaint for declaratory and injunctive relief, naming as defendants William Villa, d.b.a. All–America Telemarketing and Blue Ribbon Entertainment, John Howe, d.b.a. Howe Productions and Northstar Entertainment, J.R. Whyte, d.b.a. The Protel Group, the Association for Disabled Children[1] and the Century Surety Company.[2] The complaint alleged that Villa, Howe and the other named defendants had violated various provisions of R.C. Chapter 1716, regarding charitable organizations and professional solicitors.

The complaint averred that defendants Villa and Howe had registered with plaintiff as professional solicitors in February 1991, Villa registering to conduct business as All–America Telemarketing, and Howe registering to conduct business as Howe Productions and Northstar Entertainment. The complaint alleged

1. Prior to trial, plaintiff obtained a default judgment against the Association for Disabled Children and J.R. Whyte, d.b.a. The Protel Group.

2. Century Surety Company was named as a defendant based upon the allegation that it had issued surety bonds to defendants William Villa and John Howe.

that Howe and Villa conducted charitable fund-raising activities on behalf of the Regular Veterans Association and the Association for Disabled Children.

Plaintiff's twelve-count complaint included the following allegations. Defendants had violated statutory solicitation disclosure requirements during the fund-raising campaign for the Regular Veterans Association and the Association for Disabled Children, *i.e.*, defendants had failed to disclose "their names and the fact that solicitations were being made by them as professional solicitors." Defendants had also failed to disclose "the name and address of each charitable organization on behalf of which all or any part of the contribution collected will be used," and defendants had failed to disclose, upon request, "the percentage of gross revenue that the charitable organization will receive as a benefit from the solicitation campaign."

On October 20, 1993, defendants Villa and Howe filed a motion *in limine*, seeking in part to exclude from trial telephone calls allegedly made by defendants in soliciting contributions. Defendants' motion asserted that the alleged calls were inadmissible as hearsay and that they could not be properly authenticated pursuant to Evid.R. 901.

The matter came for trial on October 20, 1993. At trial, plaintiff presented the testimony of various individuals who received calls requesting donations on behalf of either the Association for Disabled Children or the Regular Veterans Association. Following the trial of this matter, the trial court ruled on defendants' motion *in limine*, holding that the telephone calls at issue were inadmissible because they could not be properly authenticated.

On appeal, plaintiff sets forth one assignment of error for review:

"The trial court erred in excluding from evidence the testimony of witnesses to telephone solicitations when the plaintiff had presented evidence authenticating the telephone calls as having been made by the defendants."

The sole issue raised by plaintiff on appeal is whether the trial court erred in granting defendants' motion *in limine*, which sought to exclude evidence of telephone conversations to individuals allegedly solicited by defendants or their employees or other agents.

Both plaintiff and defendants cite Evid.R. 901 in support of their respective arguments regarding the admissibility of the telephone conversations at issue. That rule provides in pertinent part:

"(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

" * * *

"(4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

"(5) Voice Identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

In the present case, in granting defendants' motion to exclude testimony by plaintiff's witnesses regarding telephone calls allegedly made by defendants, the court held as follows:

"Clearly, Rule 901 of the Ohio Rules of Evidence applies to telephone calls. The testimony offered to authenticate the calls in question was inadequate. In all cases, the witness did not know who called; did not connect the call in any way with the Defendants herein; and had no idea who called. An effort was made to authenticate these calls with information received after the fact through the mail. While it is easy to presume Defendant's violation, it must be proven by the appropriate burden of proof. These efforts therefore fail to authenticate the phone calls. The phone calls in question are inadmissible."

The testimony at issue pertained to four witnesses called by plaintiff at trial: Judith Carson, Jean Shiller, Kent Shimeall and Terri Herbert. Each of these witnesses testified that they were solicited over the telephone by callers representing either the Association for Disabled Children or the Regular Veterans Association.

Judith Carson, a research assistant at the Ohio Agriculture Research and Development Center in Wooster, Ohio, testified that she received a telephone call on October 24, 1991. The caller requested a donation on behalf of the Association for Disabled Children, and told Carson that the organization acted as a bridge between handicapped children and other organizations.

Carson asked the caller if the organization provided wheelchairs and prostheses to children. The caller stated that "we do help provide those things." Carson further asked whether the money remained in Wayne County. The caller answered, "yes, it does." Carson asked the caller to send her literature regarding the organization. Carson told the caller that she would donate $5. Carson testified that the caller did not identify himself as a professional solicitor.

Carson subsequently received a thank-you letter, a pledge card and a card soliciting the address of anybody the recipient thought might be in need of the organization. The address for the Association for Disabled Children was listed as a post office box in Wooster, Ohio. The literature Carson received made her suspicious and she contacted the Better Business Bureau and the Ohio Attorney General.

Jean Shiller is an account clerk with the Ohio Attorney General, working in the charitable foundations section. As part of her job duties, Shiller sets up files and registers professional solicitors. Shiller testified that the Regular Veterans Association was registered with the Attorney General's office.

Shiller testified that she was solicited by telephone at her residence in February 1991. The caller, a male, indicated that he was with the Regular Veterans Association. Being somewhat familiar with the law regarding charitable solicitations, Shiller asked the caller if he was a professional solicitor. The man answered affirmatively, and stated that he worked for "All America." Shiller further asked the solicitor what percentage of the gross proceeds would be going to the organization. The man stated that he did not know.

Kent Shimeall, an employee with the Ohio Attorney General, was formerly the section chief for the Charitable Foundations Section of the Ohio Attorney General. In February 1991, Shimeall was solicited over the telephone by a female caller, who stated that she was calling on behalf of the Regular Veterans Association. The caller stated that the funds would be used to purchase personal items for troops in Operation Desert Storm. She further stated that the solicitation she was conducting was authorized by the Department of Defense, which had given written approval for the contribution campaign. Shimeall asked to have that information sent to him. Although the caller stated it would be sent, Shimeall never received the requested information. Shimeall testified that the caller did not state that she was a professional solicitor.

Shimeall subsequently reviewed the Attorney General's files regarding the organization. He discovered that the organization was represented by a professional solicitor. Shimeall contacted the attorney representing the solicitors, and raised concerns he had about the telephone call he received. The attorney sent Shimeall a "pitch sheet" used by the solicitors, which included a reference to Department of Defense authorization or approval of the solicitation campaign for the purpose of sending items of personal necessity to troops.

Shimeall then wrote a letter to the Regular Veterans Association. Shimeall later received a letter from the organization, indicating that the Department of Defense did not employ written authorization to raise funds for any military program.

Terri Herbert, a supervisor of handicapped children in Lake and Geauga Counties, testified that, in the fall of 1991, she received a telephone solicitation from a female caller, seeking contributions on behalf of the Association for Disabled Children. Herbert, who was familiar with other charitable organizations involving handicapped children, had not heard of the Association for Disabled Children. She asked the caller to send her literature regarding the organization.

Herbert was subsequently mailed some literature, including a pledge form with a tear-off section indicating that she had pledged $10. The return address on the envelope was a location in Mentor, Ohio. Herbert testified that she did not pledge any amount over the phone. Upon receiving the mailing, Herbert became suspicious of the organization. She subsequently contacted the Mentor Police Department, the Better Business Bureau and the Ohio Attorney General.

During cross-examination, all four witnesses stated that they did not know who called them. In addition to the testimony of the above witnesses, plaintiff introduced other evidence in an attempt to show that the telephone calls were tied to the defendants. Specifically, as part of the discovery in this matter, plaintiffs had submitted interrogatories to defendant, requesting the production of documents identifying the name, address and telephone number of each person who had contributed to the Association for Disabled Children or the Regular Veterans Association. At trial, plaintiff introduced plaintiff's Exhibit No. 2, a list submitted by defendant in response to the discovery request. Carson's name, address and telephone number appeared on the list.

Plaintiff also introduced, as plaintiff's Exhibit U, the phone script (or "pitch sheet") used by defendants' solicitors in requesting contributions for the Regular Veterans Association. The script stated in part that contributions were designed to "show our support for those courageous men and women who are serving our country in the Middle East," and that the Regular Veterans Association "has been authorized by the Department of Defense to adopt 'troops' for the purpose of sending items of personal necessity."

Plaintiff's Exhibit Q consisted of literature sent to Terri Herbert in response to the call she received. As previously noted, an envelope was enclosed with the literature, providing a return address for a Mentor, Ohio location. At trial, plaintiff called Mark Houser as a witness. Houser operates a mail forwarding service in Mentor, Ohio. Houser testified that an individual named James R. Whyte rented the location at 9391 Mentor Avenue, Suite 233, during 1991. The evidence at trial indicated that Whyte was listed as a subcontractor of Blue Ribbon Entertainment on the solicitor registration statement filed by defendant Villa. Houser testified that the rental box received mail designated to "The Protel Group," "Kid Print" and "The Association for Disabled Children."

In granting defendants' motion *in limine,* and thus holding that the testimony at issue was inadmissible, the trial court focused upon whether the witnesses receiving the calls could identify the voices initiating the call or could identify the caller based upon the phone conversation. The court, while noting in its ruling that "[a]n effort was made to authenticate these calls with information received after the fact through the mail," apparently did not view such evidence to be relevant to the issue of authentication under Evid.R. 901.

In general, "Ohio courts have adopted a liberal approach in admitting telephone conversations in civil cases. Telephone conversations are admitted where the identity of the parties is 'satisfactorily explained.'" *State v. Williams* (1979), 64 Ohio App.2d 271, 274, 18 O.O.3d 262, 264, 413 N.E.2d 1212, 1215. In *State v. Vrona* (1988), 47 Ohio App.3d 145, 149, 547 N.E.2d 1189, 1195, the court held:

"Testimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. 'There is no fixed identification requirement for all calls.' * * * 'Each case has its own set of facts.'" (Citations omitted.)

The provisions of Evid.R. 901 at issue are identical to Fed.R.Evid. 901. Federal cases interpreting Fed.R.Evid. 901 have held that identification of the voice is not a prerequisite to the admissibility of a telephone conversation. *Cwach v. United States* (C.A.8, 1954), 212 F.2d 520, 525. "Identity of the person with whom the conversation is alleged to have been had may be established by circumstantial evidence." *Id.*

One federal court has noted the following regarding the issue of authentication under Evid.R. 901:

"Fed.R.Evid. 901(b) provides examples of appropriate methods of authentication. These examples include '[t]estimony that a matter is what it is claimed to be,' Rule 901(b)(1), and '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances,' Rule 901(b)(4). Thus, '[i]t is clear that the connection between a message (either oral or written) and its source may be established by circumstantial evidence.' * * * Moreover, '[a]ny combination of items of evidence illustrated by Rule 901(b) * * * will suffice so long as Rule 901(a) is satisfied.' * * * Finally, '[t]he burden of proof for authentication is slight.' * * * We have explained that[:]

"'the showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not

the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.'" *United States v. Reilly* (C.A.3, 1994), 33 F.3d 1396, 1404.

Based upon applicable law, and a review of the evidence submitted by plaintiff, we conclude that plaintiff made a prima facie showing of authenticity, and thus the trial court erred in holding that the testimony at issue was inadmissible. While the court appears to have focused upon the witnesses' inability to identify the callers based upon the conversations, the court failed to give proper consideration to evidence introduced subsequent to the calls. However, circumstantial evidence, as well as direct, may be used to show authenticity. *Williams, supra,* 64 Ohio App.3d at 274, 18 O.O.3d at 264, 413 N.E.2d at 1215. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be." *State v. Easter* (1991), 75 Ohio App.3d 22, 25, 598 N.E.2d 845, 847.

As noted previously, evidence submitted by plaintiff, in addition to testimony by the four witnesses regarding solicitation calls they received, included defendants' own contribution list, which listed the name, address and phone number of plaintiff's witness Carson. Carson testified that she told the phone solicitor that she "would donate $5 at the time."

Plaintiff also submitted as evidence the pitch sheet used by defendants' employees. Statements given to Kent Shimeall, by an individual calling on behalf of the Regular Veterans Association, closely matched information on the pitch sheets, evidencing a knowledge by the caller of facts which only someone utilizing defendants' materials would be likely to know. Plaintiff's evidence strongly suggested that it was improbable that someone other than defendants or their agents placed the call.

Further, plaintiff presented evidence of correspondence mailed to a witness as a result of one of the telephone conversations. Specifically, in response to the solicitation call made to Terri Herbert, she was sent literature which included a return envelope bearing a Mentor, Ohio address. It was undisputed that the envelope was addressed to a post office box rented by an agent of defendant Villa. One federal court has noted that "establishing the identity of a person by evidence that he made a reply or response in a manner that was expected to be evoked by a communication made to him by another who cannot identify him is well-recognized and time-honored." *United States v. Espinoza* (C.A.4, 1981), 641 F.2d 153, 170.

In sum, we conclude that the testimony of plaintiff's witnesses, in conjunction with other circumstantial evidence, was sufficient to meet the threshold requirement for authentication. Of course, upon admission of the evidence, the trier of

fact would be entitled to give such evidence as much or little weight as the circumstances warrant. We only determine that plaintiff presented sufficient preliminary evidence to satisfy the threshold admissibility requirements of Evid.R. 901.

█ Defendants raise the contention that the statements at issue constitute inadmissible hearsay. Pursuant to Evid.R. 801(C), a hearsay statement is defined as "a statement, other than one made by the declarant while testifying at the trial * * * offered in evidence to prove the truth of the matter asserted."

Plaintiff argues that the testimony was not offered to prove the truth of the conversations at issue but merely to establish that solicitations were made; thus, plaintiff contends, the statements would not be inadmissible as hearsay. We agree. In *State v. Lewis* (1970), 22 Ohio St.2d 125, 51 O.O.2d 209, 258 N.E.2d 445, paragraph two of the syllabus, the Ohio Supreme Court held:

"The hearsay rule is applicable to an extrajudicial statement which is offered for the purpose of establishing the truth of the matter asserted therein, but where a witness testifies as to the contents of a telephone call received by her from a person not identifiable by the witness, and such testimony is admitted, not for the purpose of proving the truth of the matter stated by the caller but only for the purpose of establishing that the call was made, such testimony is not in violation of the hearsay rule."

Defendants' contention that the statements constitute inadmissible hearsay is not well taken.

Finally, we note that in the present case, the trial court's final judgment entry dismissed all twelve counts of plaintiff's complaint. Further, the trial court, in ruling upon defendants' motion *in limine*, concluded that the relevancy of testimony of the four witnesses regarding the telephone conversations was limited in scope to counts one, two, three, six and seven of the complaint. We agree that the excluded testimony was pertinent as to those counts, and find that dismissal of the remaining counts, with the exception of count twelve (alleging bond forfeiture as a result of defendants' failure to comply with provisions of R.C. Chapter 1716), would not be affected by the court's failure to admit testimony regarding the telephone conversations.[3] Accordingly, we reverse and remand for a new trial only as to counts one, two, three, six, seven and twelve of the complaint.

---

**3.** As previously noted, plaintiff obtained a default judgment against J.R. Whyte, d.b.a. The Protel Group, and the Association for Disabled Children. As a result, the final judgment entry of the trial court noted that counts four and eight of the complaint "are no longer at issue."

Based upon the foregoing, plaintiff's first assignment of error is sustained to the extent provided above, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with law and in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

JOHN C. YOUNG and HOLMES, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.