[Cite as *State v. Hickey*, 2019-Ohio-2640.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RYAN HICKEY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 HA 0003**

---

Criminal Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CRI 2017-0019

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. T. Owen Beetham*, Harrison County Prosecutor, and *Atty. Jeffrey J. Bruzzese*, Assistant Prosecuting Attorney, 111 W. Warren Street, P.O. Box 248, Cadiz, Ohio 43907, for Plaintiff-Appellee and

*Atty. Travis Collins*, 105 Jamison Avenue, Cadiz, Ohio 43907, for Defendant-Appellant.

Dated: June 20, 2019

_____

**D'APOLITO, J.**

**{¶1}** Appellant, Ryan Hickey, appeals from the June 7, 2018 judgment of the Harrison County Court of Common Pleas, sentencing him to community control sanctions for theft by deception involving a construction contract following a bench trial. On appeal, Appellant argues the trial court erred (1) in overruling his Crim.R. 29(A) motion, (2) alleges a document was improperly admitted into evidence, (3) and that his conviction was not supported by the manifest weight of the evidence. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On April 10, 2017, Appellant was indicted by the Harrison County Grand Jury on one count of theft by deception, a felony of the fourth degree, in violation of R.C. 2913.02(A)(3). Appellant entered a not guilty plea at his arraignment. Appellant waived his rights to a speedy trial and to a jury trial.

**{¶3}** A bench trial commenced on March 27, 2018.

**{¶4}** Jackie Polito was the sole witness to testify at trial. Mrs. Polito testified for Appellee, the State of Ohio, that Appellant was engaged in a landscaping business as owner/operator. In March 2016, Mrs. Polito met Appellant's officer manager, Scott Sudzina, at a home show in Pennsylvania. Mrs. Polito was interested in having a patio/landscape project done at her home in Harrison County. She made arrangements to have Appellant's company come out to her residence. About one week after the home show, Appellant met with Mrs. Polito at her home. Appellant reviewed plans which had already been drawn by another company for an exterior renovation extending off an existing porch.

**{¶5}** Before hiring Appellant for this project, Mrs. Polito examined Appellant's business website and business Facebook page in order to determine whether he was operating a legitimate business. She also went to Appellant's business to check out the operation. Feeling satisfied at that point, Mrs. Polito hired Appellant to construct a patio, fireplace, retaining wall, and waterfall, at a total cost of $36,000. The parties entered into

a "Residential Services Engagement Contract" on April 29, 2016. (State's Exhibit 3). The contract states in part:

**{¶6}** "CONTRACT TERMS

**{¶7}** "This is an agreement between 'Customer,' as noted above, and RJ Hardscaping and Landscaping LLC ('RJ'), 110 Penn Shaft Drive Irwin, Pa 15642. * * *

**{¶8}** "PAYMENTS

**{¶9}** "All deposits are non-refundable. Unless otherwise agreed upon, Customer will pay RJ 25% of the Contract Price upon signing and acceptance of the Proposal. Customer will pay RJ 50% of the Contract Price the day work begins. Customer will pay RJ 15% of the Contract Price the day the concrete work is completed. RJ will invoice Customer for the remaining 10% when work is 'substantially complete,' as determined by RJ, where the Customer can make use of the work performed and ordinarily only minor work remains. * * *

**{¶10}** "* * *

**{¶11}** "PROJECT START, COMPLETION, CHANGE ORDERS and DELAYS

**{¶12}** "An estimate of the number of days to complete the contracted work and an expected start date are provided as a courtesy and are also required for both RJ and Customer planning and scheduling purposes. There may be delays in the beginning date and completion date due to poor weather or other circumstances beyond the control of RJ. Those delays will not alter or invalidate any part of this Contract, nor will they entitle Customer to additional rights under the Contract. * * *"

**{¶13}** The contract listed May 16, 2016 as the tentative start date and specified that the project would take eight days to complete. Appellant assured Mrs. Polito that the project would be completed before the Politos' Fourth of July family reunion. Pursuant to the terms of the contract, Mrs. Polito mailed a $9,000 deposit (25% of the total amount) to Appellant in the form of a check. (State's Exhibit 1).

**{¶14}** Throughout the month of May, the anticipated start date for the project to begin continually was delayed and rescheduled. Appellant finally started at the Polito residence on June 6, 2016, which mainly consisted of excavation work. Scott and two workers were present that day. Pursuant to the terms of the contract, Scott requested $18,000 (50% of the total amount) from Mrs. Polito so that Appellant could order additional

block for the patio. Scott made it clear to Mrs. Polito that he could not leave without receiving the extra funds. Mrs. Polito wrote a check to Appellant for $18,000 on that date. (State's Exhibit 2).

{¶15} The next day, June 7, two workers went to the Polito residence to complete more excavation work. Those same two employees showed up again on June 8. On June 9, nobody arrived and no work was performed. On that date, Mrs. Polito conversed with Appellant via phone. During that conversation, Appellant assured Mrs. Polito that block would be delivered to her home the following Monday, June 13. Appellant further assured her that once the block was there, they would spend two days building the wall and would then lay concrete the following day to begin the patio work. Appellant gave Mrs. Polito a work schedule for June 13 through 16 for the work that was to be completed, but which never occurred.

{¶16} Contrary to Appellant's assurances, no materials were delivered and no workers arrived at the Polito residence on June 13. Mrs. Polito tried all day to contact Scott. Scott ended up sending Mrs. Polito an email claiming that the delivery truck had broken down on the way to her home. (State's Exhibit 5). On June 16, Scott sent another email to Mrs. Polito indicating that he was trying to find out what was going on and stating that Appellant is "M.I.A.," i.e., short for missing in action. (State's Exhibit 6).

{¶17} Later on June 16, Mrs. Polito contacted her bank to inquire whether she was able to stop payment on the $18,000 check. However, a representative from the bank informed her that the check had already been cashed and the money cleared. Also on that date, Mrs. Polito attempted to visit Appellant's business website again. That site no longer existed. Mrs. Polito also attempted to visit Appellant's business Facebook page again. That page also no longer existed. Mrs. Polito tried calling Appellant and Scott all day, however, there was no answer. Mrs. Polito blocked her number and finally called Scott on his cell phone. Mrs. Polito believes Scott picked up the phone but it is unclear from the record whether the two conversed at that time. It is clear from the record, however, that Appellant never returned to complete the work and never refunded any monies received from Mrs. Polito.

{¶18} Mrs. Polito testified that she received notice on June 23, 2016 that Appellant's business would be filing bankruptcy. On the docket from the bankruptcy case,

Case No. 18 HA 0003

U.S. Bankruptcy Court, Western District of Pennsylvania (Pittsburgh), Bankruptcy Petition No. 16-23447-GLT, several other allegations of fraud and deception were alleged for money paid for work that was never performed. The court document from the bankruptcy filings included Mrs. Polito as a creditor/party to Appellant's bankruptcy. The document was admitted into evidence, over Appellant's objection, as a public record. (State's Exhibit 8).

**{¶19}** Mrs. Polito went on to state that she felt deceived, lied to, and tricked by Appellant, especially with respect to the $18,000 payment, which she felt pressured into paying even though it was part of the contract terms. It was clear to Mrs. Polito that the minimal work performed on June 6, 7, and 8, was only performed in order to delay her from stopping payment on the $18,000 check. Mrs. Polito felt led on by a conversation with Appellant that materials were being ordered and work would resume on June 13. In addition, during the time between the delivery of the second check and that check clearing Mrs. Polito's bank account, she indicated that Appellant made representations to her that all of the work would be completed before her family Fourth of July reunion. Mrs. Polito reiterated that within a week of all of this occurring, Appellant's business website and business Facebook page were taken offline. The work that was performed consisted of little more than digging the beginnings of a foundation. Mrs. Polito stated that Appellant's work was so sloppy that a subsequent contractor had to re-do everything.

**{¶20}** At the close of the State's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

**{¶21}** Appellant did not testify nor did he present any defense witnesses.

**{¶22}** Following trial, on April 19, 2018, the trial court determined that the initial payment of $9,000 did not constitute theft by deception. However, as to the second payment of $18,000, the court found Appellant guilty of theft by deception as charged in the indictment.

**{¶23}** On June 7, 2018, the trial court sentenced Appellant to community control sanctions including two years of supervision under the Adult Parole Authority, 100 hours of community service, and restitution in the amount of $18,000. Appellant filed a timely appeal and raises three assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S RULE 29(A) MOTION WHERE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN DEFENDANT'S CONVICTION FOR THEFT BY DECEPTION FOR FUNDS RECEIVED UNDER A CONSTRUCTION CONTRACT.**

## ASSIGNMENT OF ERROR NO. 3

**DEFENDANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶24}** Because Appellant's first and third assignments of error call into question the sufficiency and weight of the evidence adduced at trial, we will address them together to avoid repetition.

When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. * * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997)."

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

**{¶25}** "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

**{¶26}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

**{¶27}** Appellant takes issue with the guilty finding for theft by deception, a felony of the fourth degree, in violation of R.C. 2913.02(A)(3), which states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"

**{¶28}** R.C. 2913.01(A) defines "deception" as:

Knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

**{¶29}** The term "deprive," under R.C. 2913.01(C), means to do any of the following:

**{¶30}** "(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

**{¶31}** "(2) Dispose of property so as to make it unlikely that the owner will recover it;

**{¶32}** "(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration."

**{¶33}** "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶34}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶35}** "Because intent lies within the privacy of a person's own thoughts and is therefore not susceptible to objective proof, intent is determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *State v. Capone*, 8th Dist. Cuyahoga No. 86281, 2006-Ohio-1537, ¶ 32, citing *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995).

**{¶36}** In the instant case, the State was required to demonstrate that at the time Appellant took the money at issue, he had no intent to repay it or perform under the contract in exchange. *See Capone* at ¶ 34.

**{¶37}** This court's review of the record establishes that there was ample proof of Appellant's intent to deprive Mrs. Polito of her money by deception pursuant to R.C. 2913.02(A)(3).

**{¶38}** As stated, after Mrs. Polito initially met with Appellant and checked his online credentials, she mailed a $9,000 deposit to him in the form of a check along with a signed contract on April 29, 2016. Appellant assured her that the outdoor project would be completed before the Politos' Fourth of July family reunion.

**{¶39}** After delays, Appellant finally started at the Polito residence on June 6. Appellant's office manager, Scott, and two workers were present that day. Scott

requested $18,000 from Mrs. Polito so that Appellant could order additional block for the patio. Scott made it clear to Mrs. Polito that he could not leave without receiving the extra funds. Although it was part of the contract terms, Mrs. Polito testified that she felt pressured and ended up writing a check to Appellant for $18,000 on that date.

**{¶40}** Two workers went back to the Polito residence on June 7 and 8 to complete some more excavation work. On June 9, nobody arrived and no work was performed. On that date, Appellant assured Mrs. Polito during a phone conversation that block would be delivered to her home the following Monday, June 13. Appellant further assured her that once the block was there, they would spend two days building the wall and would then lay concrete the following day to begin the patio work. Appellant gave Mrs. Polito a work schedule for June 13 through 16 for the work that was to be completed, but which never occurred.

**{¶41}** No materials were delivered and no workers arrived at the Polito residence on June 13, as promised by Appellant. Mrs. Polito tried all day to reach Scott. Scott ended up sending Mrs. Polito an email claiming that the delivery truck had broken down on the way to her home. On June 16, Scott sent another email to Mrs. Polito indicating that he was trying to find out what was going on and stating that appellant is "M.I.A." Mrs. Polito contacted her bank but could not stop payment on the $18,000 check because it had already been cashed and the money cleared. Appellant's business website and Facebook page no longer existed. Mrs. Polito was unable to reach Appellant. He never returned to complete the work and never refunded any monies.

**{¶42}** Within a week, Mrs. Polito received notice that Appellant's business would be filing bankruptcy. It was apparent that Appellant was so far behind on other work and money owed to other customers that there was simply no way that he was ever going to complete or had intended on completing the work at the Polito residence. Mrs. Polito further testified that she felt deceived, lied to, and tricked by Appellant. It was clear to Mrs. Polito that the minimal work performed on June 6, 7, and 8, was only performed in order to delay her from stopping payment on the $18,000 check. Mrs. Polito felt led on by a conversation with Appellant that materials were being ordered and work would resume on June 13.

Case No. 18 HA 0003

**{¶43}** Pursuant to *Jenks, supra*, there is sufficient evidence upon which the trier of fact could reasonably conclude beyond a reasonable doubt that the elements of theft by deception were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

**{¶44}** Also, the trier of fact chose to believe the State's witness, Mrs. Polito. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the trier of fact did not clearly lose its way in finding Appellant guilty of theft by deception. *Thompkins, supra*, at 387.

**{¶45}** Appellant's sufficiency and manifest weight arguments contained in his first and third assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE A COMPUTER PRINT-OUT OF A PURPORTED 'CLAIMS REGISTER' FROM DEFENDANT'S BANKRUPTCY CASE WHERE THE DOCUMENT WAS NOT AUTHENTICATED AND CONTAINED HEARSAY WITHIN HEARSAY.**

**{¶46}** "The admission or exclusion of evidence is within the trial court's broad discretion and this court will not reverse its decision absent an abuse of that discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (1996). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980)." *State v. Bauman*, 7th Dist. Columbiana No. 17 CO 0016, 2018-Ohio-4913, ¶ 52.

**{¶47}** Evid.R. 801(C) states: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**{¶48}** Evid.R. 802 provides: "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio,

Case No. 18 HA 0003

by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

**{¶49}** "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Evid.R. 805.

**{¶50}** Evid.R. 803(8) states:

**{¶51}** "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**{¶52}** "* * *

**{¶53}** "(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

**{¶54}** The Ohio Rules of Evidence provide several alternative means by which documents and public records may be authenticated. Evid.R. 901 and 902. If a document cannot be properly authenticated pursuant to Evid.R. 902, it can be properly authenticated by the use of extrinsic evidence pursuant to Evid.R. 901.

**{¶55}** Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

**{¶56}** Evid.R. 901(B) provides ten "examples of authentication or identification conforming with the requirements" of the rule. However, the rule makes it clear that the examples are for "illustration only" and that they are "not by way of limitation." *Id.* Two of the examples set forth in the rule are the following:

**{¶57}** "(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.

**{¶58}** "* * *

{¶59} "(7) Public Records or Reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement or data compilation, in any form, is from the public office where items of this nature are kept." *Id.*

{¶60} "Furthermore, the threshold standard for authenticating evidence does not require conclusive proof of authenticity but only sufficient foundational evidence to allow the trier of fact to conclude that the evidence is what the proponent claims it to be." *State v. Smith*, 197 Ohio App.3d 742, 2012-Ohio-532, ¶ 16 (3rd Dist.), citing *State ex rel. Montgomery v. Villa,* 101 Ohio App.3d 478, 484-485, 655 N.E.2d 1342 (10th Dist.1995).

{¶61} In this case, Appellant relies on Evid.R. 902 to support his position that the claims register from his bankruptcy case (State's Exhibit 8) should not have been admitted into evidence because it bore no signature or certification and, thus, was not properly authenticated. Evid.R. 902(1), (2), and (4). Appellant further suggests that even if the claims register was admissible, the document contains impermissible hearsay within hearsay.

{¶62} Contrary to Appellant's position with respect to authentication and/or hearsay, this court notes that although a document does not satisfy Evid.R. 902, it may still be authenticated, and thus admissible, pursuant to Evid.R. 901(A) and Evid.R. 901(B)(1) and (7). *See State v. Myers*, 1st Dist. Hamilton No. C-870215, 1988 WL 17133, *1 (Feb. 17, 1988).

{¶63} Here, the State's witness, Mrs. Polito, testified from personal knowledge as a participant in Appellant's bankruptcy action that the claims register was what the State purported it to be. Therefore, testimony regarding Appellant's bankruptcy with respect to the claims register was properly authenticated and admissible through the personal knowledge of the State's witness. Evid.R. 901(B)(1).

{¶64} The claims register was also properly authenticated and admissible as a public record or report. Evid.R. 901(B)(7); *see In re E.R.*, 9th Dist. Medina No. 05CA0108-M, 2006-Ohio-4816, ¶ 35-37 (holding that a document from another court was properly authenticated and admissible as a public record or report pursuant to Evid.R. 901(B)(7), and that any error regarding its admissibility must be considered harmless due to the fact

Case No. 18 HA 0003

that there was witness testimony pursuant to Evid.R. 901(B)(1) as to the relevant substance of the document).

**{¶65}** The record establishes sufficient identification to overcome the threshold needed to authenticate the document pursuant to Evid.R. 901. *See Smith*, *supra*, at ¶ 16, 18. Accordingly, the trial court did not abuse its discretion in admitting State's Exhibit 8.

**{¶66}** Appellant's second assignment of error is without merit.

## CONCLUSION

**{¶67}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The judgment of the Harrison County Court of Common Pleas sentencing Appellant to community control sanctions for theft by deception involving a construction contract following a bench trial is affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**